In the Matter of the Claim of FRANK PESTLIN, Respondent, against HAXTON CANNING COMPANY, INC., et al., Respondents. WORKMEN'S COMPENSATION BOARD, Appellant.

Argued April 12, 1949; decided July 19, 1949.

*Nathaniel L. Goldstein, Attorney-General* (*Daniel Polansky, Wendell P. Brown* and *Roy Wiedersum* of counsel), for appellant. I. Ample evidence supported the finding of the board that claimant was an employee of Haxton Canning Company. (*Taylor* v. *Bradley*, 39 N. Y. 129; *Stroher* v. *Elting*, 97 N. Y. 102; *Leggett* v. *Hyde*, 58 N. Y. 272; *Matter of Enright* v. *Asplundh Tree Expert Co.*, 297 N. Y. 452; *Matter of Comstock* v. *Grastorf*, 295 N. Y. 875; *Matter of Romeo* v. *Holley Canning Co.*, 272 App. Div. 1092; *Matter of Smothers* v. *D. & M. Pharmacy*, 271 App. Div. 760; *Matter of Ferreira* v. *Sutherland*, 270 App. Div. 869; *Matter of Maher* v. *Commander Taxi Corp.*, 227 App. Div. 832.) II. Claimant was not a farm laborer but was performing work incidental to the employer's canning business. In any event, he was covered by the employer's policy of compensation insurance under the provisions of group 19 of subdivision 1 of section 3 and subdivision 4 of section 54 of the Workmen's Compensation Law. (*Matter of Clarke* v. *Roger I. Sherman, Inc.*, 184 App. Div. 921; *Lewkowitz* v. *Cohen*, 210 App. Div. 803; *Matter of Hamilla* v. *Gade*, 278 N. Y. 502; *Matter of Miles* v. *Colegrove*, 258 App. Div. 1014, 284 N. Y. 609; *Vincent* v. *Taylor Bros.*, 180 App. Div. 818; *Matter of Baum* v. *Welden*, 294 N. Y. 464; *Matter of Butterfield* v. *Brown*, 287 N. Y. 623; *Matter of Moreno* v. *Halstead Canning Co.*, 258 App. Div. 832; *Matter of Adams* v. *Ross*, 230 App. Div. 216.) III. The award of double compensation was properly made pursuant to section 14-a of the Workmen's Compensation Law on ample evidence establishing a violation of section 131 of the Labor Law. (*Matter of Sackolwitz* v. *Hamburg & Co.*, 295 N. Y. 264; *Matter of Newton* v. *Spear & Co.*, 270 App. Div. 667, 296 N. Y. 918; *Matter of Miller* v. *Saratoga Onega Bottling Co.*, 271 App. Div. 941; *Matter of Joseph* v. *Sterilek Co.*, 260 App. Div. 969, 285 N. Y. 796; *Matter of Braiter* v. *Addie Co.*, 256 App. Div. 882, 282 N. Y. 326; *Matter of Warner* v. *Wendt's Ice Cream Co.*, 256 App. Div. 1017; *Matter of Kociolowicz* v. *Tonawanda Corrugated Box Co.*, 252 App. Div. 716.)

*Morgan F. Bisselle* and *Warren C. Tucker* for Utica Mutual Insurance Company, respondent. I. Claimant was not an employee of Haxton at the time he was injured. II. Assuming, but not conceding, that claimant was an employee of Haxton at

the time he was injured, he was a farm laborer and excluded from the Workmen's Compensation Law. (*Matter of Bennett* v. *Stoneleigh Farms,* 254 App. Div. 790; *Matter of Davis* v. *Ryan,* 262 App. Div. 982, 287 N. Y. 778; *Matter of Harter* v. *Andrus,* 259 App. Div. 942; *Matter of La Duke* v. *Martin,* 261 App. Div. 344, 287 N. Y. 546.)

*Frederick T. Pierson* for Haxton Canning Company, Inc., respondent. I. The employment of claimant was not illegal under section 131 of the Labor Law. (*Coleman* v. *Bartholomew,* 175 App. Div. 122; *Shrader* v. *State,* 46 N. Y. S. 2d 199; *Matter of Lazarus [Corsi],* 294 N. Y. 613; *Matter of Tesar* v. *National Ventilating Co.,* 227 App. Div. 333.) II. Claimant was a farm laborer within the meaning of the Workmen's Compensation Law. (*Matter of Davis* v. *Ryan,* 262 App. Div. 982, 287 N. Y. 778; *Matter of Bennett* v. *Stoneleigh Farms,* 254 App. Div. 790; *Matter of La Duke* v. *Martin,* 261 App. Div. 344, 287 N. Y. 546; *Matter of Harter* v. *Andrus,* 259 App. Div. 942; *Matter of Halletz* v. *Wiseman,* 193 App. Div. 4; *Ackert* v. *Delano,* 246 App. Div. 751, 271 N. Y. 584; *Brockett* v. *Mietz,* 184 App. Div. 342.) III. Claimant was not employed by Haxton Canning Company. (*Sweet* v. *Board of Education,* 290 N. Y. 73; *Kittle* v. *Town of Kinderhook,* 214 App. Div. 345.)

DESMOND, J. From the time of its original enactment (see L. 1913, ch. 816) the New York Workmen's Compensation Law has expressly excluded from its coverage: " farm laborers " (present § 2, subd. 4). None of the hundreds of amendments passed by the Legislature to extend the coverage and increase the benefits of the act, have in any way affected that exclusion. It is, therefore, beyond the power of the board or the court to grant or affirm an award to one injured when working as a farm laborer.

This injured claimant lived across the street from the farm where he was hurt. He had previously worked as a farm hand on this same farm. The day before this accident he was, as he and the farmer both testified, hired to do farm work on this farm. When injured, his work was driving a tractor which was operating, on the farm, a machine which removed beet tops from beets which had been pulled, and stacked on the ground; his arm was severed when caught and dragged into the topping machine.

That such work was farm labor seems to me to be obvious, and it was farm labor whether claimant was working for the farmer Totten or for Haxton Canning Company, Inc., for whose ultimate use in its cannery the beets were grown.

Since the only question here is as to whether claimant was, when injured, working as a " farm laborer ", it is immaterial whether the arrangement between the owner of the farm and the farmer was a lease, a joint venture, or one for work and labor, and likewise immaterial whether, as between the owner and the farmer, *Taylor* v. *Bradley* (39 N. Y. 129) applies.

The order should be affirmed, with costs.

CONWAY, J. (dissenting). This is an appeal by the Workmen's Compensation Board from an order of the Appellate Division, Third Department, which reversed, by a closely divided court, a decision of the Workmen's Compensation Board (1) awarding claimant compensation against the employer and carrier for 100% loss of his right arm and (2) granting similar — or double — compensation to the claimant solely against the employer under the provisions of section 14-a of the Workmen's Compensation Law on the ground that the claimant was a minor illegally employed at the time of the accident in violation of the provisions of section 131 of the Labor Law.

Section 131 of the Labor Law prohibits the employment of minors between the ages of sixteen and eighteen in or in connection with or for a factory, establishment, trade, business or occupation specified in section 130 of the Labor Law, unless either a standard employment certificate, a special employment certificate or a vacation work permit issued in accordance with the provisions of the Education Law, is kept on file in the office of the employer at the child's place of employment, authorizing the employer named therein to employ the child. It is not disputed that claimant was sixteen years old at the time of this accident and that the employer did not comply with section 131 of the Labor Law.

Respondents contend (1) that claimant was not an employee of Haxton Canning Company, Inc., and (2) that, in any event, claimant was a farm laborer who was excluded from the protection of the provisions of the Workmen's Compensation Law by section 2, subdivision 4. Both contentions were sustained by the majority of the Appellate Division.

The claimant Pestlin was born on May 12, 1929, and was therefore sixteen years of age at the time of the accident on October 20, 1945.

The employer Haxton Canning Company, Inc. (hereinafter called Haxton), was located in western New York and was engaged in canning vegetables and other commodities. It was also engaged in the business of growing special crops for use in its canning business.

In making its award to claimant the board made the following findings of fact:

" 2. On October 20, 1945, while the said Frank Pestlin was engaged in the regular course of his employment and while working for his employer, driving a tractor which was power connected to a topping machine, his right arm was caught in the unguarded power drive of the topping machine and dragged around the shaft. He sustained accidental injuries in the nature of a crushing injury of the right arm and forearm, requiring an amputation of the right arm about two inches below the shoulder, resulting in 100% loss of the use of the right arm.  *  *  *

" 5. At the time of the accident herein, the said Frank Pestlin was a minor under eighteen years of age, and was employed illegally, in violation of Section 131 of the Labor Law, in that he was employed in or in connection with or for a factory, establishment, trade, business or occupation specified in Section 130 of the Labor Law, and no standard employment certificate, special employment certificate or vacation work permit issued in accordance with the provisions of the Education Law was kept on file in the office of the employer at the child's place of employment, authorizing the employer named therein to employ said child.

" 6. The said Frank Pestlin was not a farm laborer at the time of the accident. He was an employee and working for and in the interest of the Haxton Canning Co."

Section 20 of the Workmen's Compensation Law provides: " The decision of the board shall be final as to all questions of fact  *  *  *." Thus it shall be our duty to determine whether those findings were fairly warranted by the evidence, because if they were, then the order of the Appellate Division must be reversed and the award of the Workmen's Compensation Board

reinstated. (*Matter of Baum* v. *Welden,* 294 N. Y. 464, and cases there cited.)

In our judgment there was ample evidence to sustain the board's finding that claimant was in the employ of Haxton at the time of the accident. The Haxton Company was owned and controlled by one Sherman Haxton and other members of his family. One of the properties was the Fred Slocum farm which consisted of 180 acres and was located at Byron, N. Y. It stood in the name of Sherman Haxton's three daughters, all of whom were married. There appear to have been about seven such farms owned either by the daughters or other members of the family. The daughters leased the farm in question to Haxton. The farm was occupied by one Buford Totten under an agreement entered into between Haxton and Totten on March 30, 1945.

By the agreement, Haxton " leased " the farm to Totten for a term of one year commencing on April 1, 1945. The property was to be used for " farming and *allied purposes* and for no other purpose ". (Emphasis supplied.) Haxton, as lessor, agreed " to turn over possession of the premises herein described (subject to the reservations herein mentioned) to the Lessee on commencement of this Lease and Lessee for himself and his heirs agrees to surrender peaceful possession of said premises including all livestock, equipment and crops belonging to the Lessor on the day the Lease terminates without further demand or notice." Haxton agreed to " pay all real estate taxes on the farm, to pay for all necessary repairs to the buildings, and to assume all depreciation thereon. * * * To furnish a one-half interest in all livestock except horses, to be kept on farm." Haxton agreed to " furnish the necessary milk cooler, milking machine and aerator and water heating equipment for the milk house and repairs for same. * * * To furnish all grass seed * * * and all fertilizers." Haxton also agreed to pay Totten $10 per month to cover its one-half share of the farm use of Totten's automobile — Totten was to pay car expenses including gasoline. Haxton agreed to pay one half of the following expenses on any truck owned by Totten and used solely in the operation of the farm: license, insurance, gasoline and oil. If the truck were used for outside work for hire, any payments received therefor were to be considered " as a farm receipt and divided equally as provided elsewhere in this lease."

Haxton agreed to reimburse Totten monthly " for regular full-time labor hired and at the rate of 2½ per cent of cash monthly wage of one such man for each cow milked during the month above 20. The average of the number of cows milking at the beginning and end of each month shall be considered the number milked during the month."

Totten as lessee agreed to " pay as rental for said farm one-half of all receipts for all produce grown on said farm, the term ' produce ' shall include all crops, livestock, and livestock products. * * * To *operate* the farm in a workmanlike manner, to plant and harvest crops and do the necessary work about the farm in a good season and to care for the crops and livestock in proper manner and to prevent all unnecessary cost to Lessor or damage to the Lessor's property. To devote all of his time to the successful *operation* of the farm." (Emphasis supplied.) Totten also agreed to furnish " all horses and farm machinery and repairs for said machinery needed to operate the premises except the dairy equipment mentioned * * * and to furnish a one-half interest in all other livestock to be kept on farm." Totten was to sow " grass seed as furnished by Lessor on fields and in manner designated by Lessor."

It was mutually agreed between them that " All livestock * * * to be furnished jointly by both parties and each class of livestock once assembled shall be considered an undivided unit. Except as otherwise provided all livestock used or kept on the farm shall be fed from the undivided produce of the farm and the expense of all feed which it may be necessary to purchase shall be paid by the Lessor and Lessee in equal proportions. All veterinary expenses for jointly owned livestock shall be shared equally." All expenses " except those specifically mentioned elsewhere in this lease in connection with the operation of the farm * * * all seeds (except grass seed), the insurance on the undivided personal property on the farm, gasoline, oil for the tractor, spray materials, twine, baling wire, baling, threshing, corn husking, corn picking, silo filling, combining and fuel for these operations shall be paid for by the Lessor and Lessee in equal proportions."

They agreed that all " monies received from the sale of milk *shall be paid to the Lessor in his name* and the Lessor agrees to divide the same monthly * * *. Unless the Lessor

and Lessee otherwise mutually agree, all crops shall be divided by the Lessor and Lessee in equal proportions as soon after they are harvested as is mutually convenient. If, however, the Lessee is indebted to the Lessor, then all sales are to be made in the name of the Lessor and accounted for in the next monthly statement.'' The '' Agricultural Conservation payments are to be considered farm income and divided as set forth in this section. The Agricultural Conservation *payments are to be made in the name of the Lessor.*'' (Emphasis supplied.) The agreement could be terminated for the following year by notice to the other party '' by registered mail on or before December 1st '' of his intention to terminate the lease on the following April 1st.

With respect to those crops which are used in canning, the parties mutually agreed that '' prior to the planting of intensive crops, such as beets, cabbage, carrots, potatoes and sweet corn, a mutually satisfactory arrangement will be worked out whereby the Lessor will pay one-half of the cost of such day labor or piece work labor as is needed in the production and harvesting of such crops.'' There was a separate oral agreement between Haxton and Totten which covered the raising by Totten of an intensive beet crop for the canning purposes of Haxton *also* on a share or joint venture basis. That oral agreement was an arrangement separate from the contract which covered the operation of the dairy farm. In our judgment that was one of the '' allied purposes '' other than and as distinguished from '' farming '' as set out in the lease, and, as is evident from finding of fact '' 5 '', the board so found. While respondents contended that the substance of the oral agreement was the same as a certain special form contract, Exhibit Y, used by Haxton with other growers of beet crops, Totten signed no such contract; there was no proof that he knew of its existence and it was admitted by Haxton's manager that it was never shown to Totten. Moreover, while Exhibit Y is printed as one of the exhibits, it clearly appears that it was *not in fact* admitted into evidence.

The record shows that the beets were planted and raised in an area of about ten acres. Haxton's farm manager, one Britt, was superintendent in charge of the intensive beet crop raising. It was his job to see that the crops were harvested

on time, to give advice and suggestions to Totten as to the raising of the crop, the use of the fertilizer and the method of cultivation. Haxton directed Totten as to the time when the beets were to be harvested and at harvest time supplied him with the crates which were required for packing the beets. Haxton also furnished a machine to cut off the tops of the beets. The beet crop was set aside exclusively for Haxton to be canned in its factory. In connection with the harvesting of the beet crop and its preparation for canning, extra help was necessary. Haxton supplied part of the needed help and also authorized Totten to hire extra help for that purpose. Extra laborers were paid for half by Haxton and half by Totten. In this instance Totten paid the claimant $10 for working on October 19th and 20th, *half of which was paid by Haxton.*

One of the operations to be performed with respect to the intensive beet crop for canning, was to top the beets after they had been harvested. That operation consisted of placing the beets with the leaves on them in a beet-topping machine. Thereupon the leaves were removed mechanically and the beet roots discharged into crates.

In *Taylor* v. *Bradley* (39 N. Y. 129), the agreement was not as strong as the one before us. There, the agreement under seal provided that the owners of the land do by these presents " lease and to farm let " all said lands to the parties of the second part. Specific provisions were made for furnishing seed, the mode of cultivation, the care of the sheep and for the division of the wool produced. Cows were to be furnished equally. The alleged tenant was to have milk for his family out of the undivided stock " after which, all proceeds [were] to be divided between the parties equally, share and share equal, both as to expenses and profits arising from said farm." After a rather extended review of the authorities in this country and England, we held that the agreement did not create the relation of landlord and tenant, in which the crops and increase of the farm would be the sole property of the tenant until after a division, with the owner's share being tendered as rent. We held that the agreement gave to each of the parties a joint interest in the crops in relation to which they stood as tenants in common. That relation was, we said, in the nature of a contract for *work* and *labor,* the legal possession of the land being in the

owner. Writing for the court, WOODRUFF, J., said (p. 140): "* * * the balance of the authorities above cited seems to be, that, notwithstanding the technical terms employed, such an agreement does not amount to a technical lease; that the relation of landlord and tenant is not contemplated, and the portion of the crops reserved to the owner is not *rent,* but compensation for the use of the land, while the other portion is compensation to the occupier, for his work, labor and services, etc.; and that the legal possession of the land is in the owner, and the two are tenants in common of the crop." (Emphasis in original.)

And at page 144, he said: " It was, in view of the decisions, a special contract, partaking somewhat of the nature of an adventure, and entitling the party to the chance of profit or benefit derivable therefrom. * * * "

Corpus Juris cites the same rule as in the *Bradley* case (*supra*) as the accepted rule by the weight of authority. It reads: " The leasing of a farm for a term of years under an agreement that the owner shall receive in lieu of rent a stipulated portion of the net profits derived from the sale of the crops produced thereon is generally held to create a joint adventure." (33 C. J., Joint Adventures, p. 843.) The following cases are in accord: *Braddock* v. *Hinchman* (78 N. J. Eq. 270); *James* v. *James* (151 Wis. 78); *Croft State Bank* v. *Girardey* (117 Kan. 585); *Arnold* v. *De Booy* (161 Minn. 255); *Pace* v. *Beckett* (69 Col. 90); *Quarles* v. *Kendrick Mercantile Co.* (202 Ala. 56); *Brown* v. *Higginbotham* (5 Leigh [32 Va.] 633).

The evidence here clearly reveals that no landlord and tenant relationship existed or was intended to exist. The agreement was in the nature of a joint adventure partly in milk, partly in farming and partly in canning. Even the moneys received from milk sales — supposedly one of the chief by-products of this farm — were to be paid in Haxton's name. Thereafter, Haxton did the dividing. The agreement was the same with respect to the Agricultural Conservation payments. The intensive crops consisted of beets, cabbage, carrots, potatoes and sweet corn. These were products used in Haxton's canning business. Totten testified that Haxton used the farm for the raising of an intensive beet crop and that the beets from the farm were canned by Haxton. The seed for the beets was fur-

nished by Haxton, and Britt directed Totten as to the time for harvesting the crop. Totten testified he knew that when the beet seed was sowed that it was for Haxton and that he could not sell the crop to any other canning company. In this connection, Britt testified that if any of the operators of the seven Haxton farms sold beets to any other canning company they would lose their contracts.

In connection with the beets, the majority of the Appellate Division held that there existed merely a contract of purchase and sale whereby Totten agreed to deliver ten acres of beets to Haxton. We think that was error which is disclosed when the facts already recited are considered. This transaction, uncontradictedly established by Exhibit X completely disclosed the relationship of the parties. It is entitled '' Beet Settlement '' and is a statement of account between the company and Totten covering the beet crop for the year 1945. *Charged* to the account is the cost of the beet seed, trucking and taxes amounting in all to $286.72. *Credited* to the account is the value of the crop at various prices per ton (depending on the size of the beets) totaling $1,757.14. One half of the balance ($1,470.42) is indicated as being due to Totten. Thus the account clearly indicates that the beet operation like the dairy farm operation were two '' allied purposes '', other and in addition to farming, were joint ventures and the board so found.

In October of 1945, there was a labor shortage in the county, and both Britt and Totten testified that it was understood between Haxton and Totten that each was to engage whatever labor could be secured. This was the substance of the oral mutually satisfactory agreement on labor referred to in the joint adventure agreement. The practice was that if Totten secured extra labor he was required to make out a report to Haxton and it reimbursed him for half the cost. On the other hand, if Haxton hired extra labor it billed Totten for half the cost. The extra labor usually supplied by Haxton were war prisoners and Jamaicans. Britt testified that the reason for billing Totten for the extra labor was '' So he would pay insurance.'' While there was denial of that by another of respondent's witnesses, that was a question of fact for the board.

As a party to the joint adventure agreement and in pursuance of the provision of that agreement, Totten hired claimant, an

orphan boy who had been placed on the McKinsey farm by the Batavia officials. Claimant testified that he had worked for two days and had received $5 a day. He drove a tractor which had attached to it a mechanically operated beet-topping machine. The topping machine was owned by Haxton. When claimant arrived for work the topping machine had already been coupled to the tractor and he was only required to drive Haxton's topping machine to various areas in the field where the beets had been harvested and stacked. We should like to emphasize that the tractor was not being used here as a general farm machine. It served only to move the topping machine and was power connected to it, i.e., it was the source of power for the topping machine. Thus the tractor was in truth a part of the topping machine and so a canning instrument rather than a farm instrument. Claimant was engaged in the topping operation which consisted in placing the beets in the machine which mechanically removed the leaves and stems and discharged the beets into crates supplied by Haxton. They were then shipped to the canning factory.

When claimant arrived for work there were six men working in the fields. Two of the men were regular farm hands. The other four were war prisoners sent to the farm by Haxton to assist in topping the beets. They were sent pursuant to the joint adventure agreement. Admittedly the war prisoners were carried on Haxton's payroll as employees. Mr. Britt testified that the war prisoners were obtained under the following circumstances: '' The Haxton Canning Company was party to a contract with an agency of the United States Government permitting them to use German prisoners of war for canning and allied purposes, including agriculture. We needed these men to cope with our contract growers [independent growers] to assist them in harvesting their crops, *in addition to using them within the plant.* Consequently, in order to use them to harvest crops of contract growers, we found we could not put them directly on the growers payroll because the growers were not a party to this contract which existed between Haxton Canning Company and that agency of the United States Government. Therefore, to accomplish the purpose of getting the crops harvested, these prisoners of war had to remain on the company payroll, and the cost of their services were billed to contract

growers.'' (Emphasis supplied.) Britt testified, as already related (*supra*) that Totten was billed for extra labor '' So he would pay insurance.''

On the second day of his employment, claimant's right arm became entangled in the topping machine. When the company's topping machine was turned over to claimant there was no guard over the driving shaft although after the accident it contained a guard. The guard would have prevented anything from falling on the revolving shaft.

We think the point need not be labored further to show that this case fits squarely within the rule of the *Bradley* case (*supra*) and that it is *not* a case where the increase of the farm was intended to be the sole property of the tenant until the division, with a share being tendered as rent. Thus, there is in fact no basis for the majority view in the Appellate Division that the agreement here constituted a lease and that the '' parties had elected to treat their relationship as one of landlord and tenant.'' (274 App. Div. 144, 147.) As a party to this joint adventure, Haxton had a property interest not alone in the farm as owner, but in the fruits of its production. Haxton's interest in the beet crop began with the seed and carried through to the canning process. Haxton's participation in the operation of the farm and the '' allied purposes '' is explained, not only because of its ownership of the farm, but also on the basis of its property interest in the canning factory.

At the time of the accident there was posted at several conspicuous places on the farm where the claimant worked a form of notice to employees that compensation had been secured by Haxton under the Workmen's Compensation Law of the State of New York. Those notices were furnished by Haxton to Totten who was instructed to post the notices in conspicuous places. A copy of such notice is in evidence as claimant's Exhibit 5 and the following portion appears over the signature of the company and is pertinent: '' The undersigned employer hereby gives notice that he has conformed to the provisions of the Workmen's Compensation Law and the rules of the Industrial Board of the State of New York, and that he has secured the payment of compensation to his employees, and the dependents of employees, engaged in employments, enumerated in *or brought within* the provisions of said law. Such compensa-

tion has been secured to such employees in accordance with Section 50 of the Workmen's Compensation Law, by insuring with Utica Mutual Insurance Company * * *.'' (Emphasis supplied.)

There was attempted proof made by Haxton to have it appear that the notice was intended to be limited so that the coverage was only for maintenance workers sent by Haxton to Totten for the purpose of keeping the premises in repair. The board was not required to believe that such was the fact when the whole notice was addressed generally to all employees and there was no limitation stated therein. The very fact that notices were so posted may well have been considered by the board as an indication on the part of Haxton that the workers in the fields who prepared the intensive beet crop for canning were in truth and fact employees of Haxton.

Thus, there was substantial evidence to support the board's finding that claimant was an employee of Haxton. Totten raised and topped the beets as an agent or operator for Haxton under joint venture, written and oral, agreements between the parties. Haxton supervised and controlled the entire beet operation. The crop had to be harvested at a definite time and delivered exclusively to Haxton. Haxton provided the seeds, topping machine and crates for carrying the beets to the canning factory. Its superintendent, Britt, advised on '' raising of seed, fertilizer, and methods of cultivation.'' It assisted in preparing the crop for canning by arranging for extra help in topping and crating, and it authorized Totten to hire additional help for that purpose. Pursuant to that authority Totten hired the claimant and Haxton paid half of claimant's wages. Further, its posting of notices in and about the farm to the effect that as an employer it had secured compensation insurance is another indication that claimant was one of its employees. With that evidence in the record the Appellate Division should not have reversed the board's finding that claimant was employed by the company.

On the question of whether claimant was a farm laborer, we have decided that work for a farmer on a farm does not *of necessity* constitute farm labor within the meaning of the Workmen's Compensation Law. (*Matter of Butterfield* v. *Brown,* 287 N. Y. 623.)

In considering the question here, we must have clearly in mind the fact that the canning company itself, Haxton, *was actually engaged in the operation of the farm and the beet-topping operation*. It was in control as tenant in common of the farm and the management of it and engaged laborers, some of whom were actually *dispatched from its factory to perform the topping operation for its canning business*. The topping operation was an incident of the canning business — at least the board could and did so find — and all the laborers engaged therein were performing services in a hazardous employment for pecuniary gain within the provisions of the Workmen's Compensation Law. (*Matter of Butterfield* v. *Brown, supra*.) That the topping process was a vital step in the canning is illustrated by the fact that Haxton owned and furnished both *the crates and the topping machine*. It was not necessary that the topping of the beets be performed by Haxton in the field. The topping operation could have been performed by Haxton with the same Haxton machinery on the premises of its canning factory. Certainly, if it were done in the factory rather than in the field, there could be no doubt that the work was incidental to the canning business, a hazardous employment within the meaning of section 3, subdivision 1, group 1, of the Workmen's Compensation Law. The topping operation, although performed by Haxton in the fields, was just as vital to the canning process as peeling, skinning, cooking or boiling of beets. While performing that work, claimant was not engaged in any service connected with the cultivation of the soil, the handling or care of the crop while in the soil or with its harvest. Those are natural incidents of farming. Neither did he do any work in connection with the dairy farm. He was employed to drive a tractor to which was connected Haxton's topping machine and to assist in throwing into it beets which had *already been harvested* and which were discharged from the machine into Haxton's crates. That work was a necessary step in the canning operation because the beets *could not have been canned without topping*. The board could and did find that the canning operation had begun with the topping of the beets in the field.

Section 21 of the Workmen's Compensation Law entitled " Presumptions " provides that:

" In any proceeding for the enforcement of a claim for compensation under this chapter, it shall be presumed *in the absence of substantial evidence to the contrary*

" 1. That the claim comes within the provision[s] of this chapter; * * *." (Emphasis supplied.)

Claimant was thus entitled to the benefit of the presumption that his claim came within the provisions of the statute, and the notices posted thereunder, and the board was required to find that claimant was doing work incidental to the canning business and that he was *not* a farm laborer *unless* there was *substantial evidence to the contrary*. Here there was no evidence that claimant was employed to work or did in fact work in connection with the tilling of the soil or in cultivating and harvesting crops. The work which he was engaged in exclusively was to tow the topping machine and assist in its operation. The board whose findings are final under section 20 of the Workmen's Compensation Law was justified in finding as it did that claimant was not a farm laborer at the time of the accident but was an employee of Haxton.

Haxton and the carrier rely on *Matter of Davis v. Ryan,* (287 N. Y. 778). There the employer operated a milk pasteurizing and bottling plant in the city of Utica. He also operated a dairy farm outside of the city, in connection with which he employed the claimant. Claimant testified that he did *general farm work* for his employer, and that this work was entirely confined to the farm. While operating a saw on the farm for the purpose of cutting wood, he was injured. The Appellate Division held that there was no evidence to sustain the finding of the Industrial Board that the work in which the claimant was engaged at the time he was injured was incidental to the pasteurizing and bottling plant and that at such time he was not a farm laborer. We affirmed. It is clear that that case is not applicable here. There claimant testified that he did general farm work and when injured he was engaged in such work. Certainly it is apparent that cutting wood on a farm by a general farm hand is not incidental to operating a pasteurizing and bottling plant. Here claimant was injured while performing an operation needed only for canning, the business of his employer.

The following decisions support that conclusion: In *Matter of Moreno* v. *Halstead Canning Co.* (258 App. Div. 832, motion for leave to appeal denied 282 N. Y. 809) a similar award of double compensation was made against the employer under section 14-a of the Workmen's Compensation Law by the State Industrial Board for a violation of section 130 of the Labor Law. Claimant, a child of ten years of age, was permitted by the canning company to help her mother pick beans for the canning factory and claimant was injured when she was thrown from a truck which was transporting her from one field to another.

In *Matter of Hamilla* v. *Gade* (278 N. Y. 502) claimant was employed generally as a farm laborer. His employer, however, operated a small machine for grinding grain for himself and others. While operating the machine the claimant was injured. We held that when a farmer engages in such a business it cannot be said that employees engaged in such business are farm laborers. It will be noted that there the claimant was employed generally as a farm laborer and we held he was removed from that category while operating his employer's grinding machine. Here the claimant was employed by Totten and Haxton *exclusively* for work in connection with the topping machine.

In *Matter of Baum* v. *Weldon* (294 N. Y. 464, *supra*) the employer owned a farm on which he conducted a business of buying, selling and baling hay. Claimant, a carpenter, was employed by the employer to remove metal sheeting from a building in the city of Hudson which the latter intended to reuse on a building on his farm. The board, in making an award for the employee's death, held that his employment was not incidental to any farm operation. The Appellate Division annulled the award on the ground that claimant was working as a farm laborer. After making reference to section 20 of the Workmen's Compensation Law we reversed (per LOUGHRAN, J.) and reinstated the award holding that the board's findings were " at least fairly warranted by the evidence." (P. 467.)

In *Matter of Lewkowitz* v. *Cohen* (210 App. Div. 803) the employer owned and operated a farm of 120 acres and during the summer months kept about 40 boarders. The claimant was his year-around farm hand. One day in July the claimant drove a farm wagon into town to obtain feed for the employer's livestock.

This was one of his usual duties. At the railroad station he picked up the trunk of one of the summer boarders. He was injured on the return trip. It was urged against the award that the claimant was a farm laborer. It was pointed out in support of the award that the employer had two lines of business, farming and operating a hotel, in both of which the claimant was engaged when injured. The award was affirmed.

In *Matter of Vincent* v. *Taylor Bros.* (180 App. Div. 818) claimant lost his right arm while engaged in feeding bundles of rye into a combined thresher and cleaner machine. The award was upon the ground that the employer was engaged in the milling business. The Appellate Division reversed the award upon the ground that in view of the stipulation settling the case on appeal, it could not be ascertained whether the record contained all the evidence on the question of whether the employer was actually engaged in the milling business. However, on the question of whether claimant was a farm laborer, the court said (p. 819): " The appellants' contention, that the claimant while feeding bundles into the machine was a farm laborer and hence not entitled to compensation, cannot be sustained. (*White* v. *Loades, supra* [178 App. Div. 236].) It is not claimed that the claimant had anything to do with carrying on the farm where the accident occurred." Here, claimant's sole duties were driving the topping machine to the various areas in the fields where the beets were stacked and fed into Haxton's topping machine.

In *Matter of Clarke* v. *Roger I. Sherman, Inc.* (184 App. Div. 921) the employer raised beans *for canning in its own canning factory.* The claimant was injured while gathering beans from the *field* to take to the employer's factory to be canned. The board held that claimant's work was incidental to the employer's canning business and the Appellate Division affirmed. There the claimant was a regular employee in the canning factory and was sent to the farm to pick the beans. Here the war prisoners sent by Haxton from its plants to assist in the topping operation were also regular employees and it seems to us that the fact that they were regular employees throws light on the character of the work performed by them and claimant, i.e., it was an operation incidental to Haxton's canning business.

On the question of the characterization of acts performed by the injured employee, we have held in *Matter of Larsen* v. *Paine Drug Co.* (218 N. Y. 252, 256) that where " an employee is injured while performing an act which is fairly incidental to the prosecution of a business and appropriate in carrying it forward and providing for its needs, he or his dependents are not to be barred from recovery because such act is not a step wholly embraced in the precise and characteristic process or operation which has been made the basis of the group in which employment is claimed."

We think it is apparent in the cases cited and those relied on by Haxton, that it is difficult on the *facts* in each case to draw a definite line of demarcation on the question of farm labor. Each case must stand upon its own facts and indeed, support and justification may be found in each for more than one inference and conclusion by the *trier of facts.* We have here a *finding of fact by the board,* and it seems to us, in view of section 20 of the Workmen's Compensation Law that the decision of the board shall be final as to all questions of fact, that if the board's finding is supported by any rational view of the evidence, we cannot, and should not, substitute our own inferences and conclusions drawn therefrom for those of the board. (See *Matter of Baum* v. *Welden,* 294 N. Y. 464, *supra.*)

The order of the Appellate Division should be reversed and the award of the Workmen's Compensation Board affirmed, with costs, upon the ground that there is evidence to sustain the finding that the claimant was engaged in a hazardous employment for pecuniary gain within the provisions of the Workmen's Compensation Law.

LOUGHRAN, Ch. J., LEWIS, FULD and BROMLEY, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion in which DYE, J., concurs.

Order affirmed.