ROBERT E. REYNOLDS, Plaintiff, *v.* MABEL PATRICK et al., Defendants.

Supreme Court, Trial Term, Onondaga County, February 2, 1950.

*Cleveland R. Kenyon* for Mabel Patrick, defendant.

*John Henley* for Floyd R. Robbins, defendant.

*Egbert L. Wildman, Jr.,* for plaintiff.

SEARL, J.  A barn floor collapsed at an auction held on a farm owned by defendant Patrick in the town of Fabius, Onondaga County, February 28, 1947.  Some thirty persons were carried into the basement of the barn.  Plaintiff has been awarded a verdict of $1,500 for injuries received.  Prior to the trial, Rowe and Gorman, auctioneers, had paid an equal amount to purchase their release, plaintiff reserving his right of action against the instant defendants.

Defendant Patrick moves for a new trial on grounds, among others, that a verdict finding the owner of the property liable and absolving the occupant, Floyd R. Robbins, is inconsistent.

Plaintiff likewise moves for a new trial on the grounds the award of damages is inadequate.

The accident occurred on the last day of a contract made between the defendants for one year, and renewed on the same terms for an additional year.  Although the contract was termed a " lease ", the court was compelled to hold, as matter of law, that the relation of landlord and tenant did not exist, but that the agreement was in the nature of a joint adventure, or one for work and labor.  Defendants each furnished eighteen cows.  Any damage to or loss of any of the cows was to be borne equally by each defendant.  Defendant Robbins was to deliver milk to the creamery.  Checks were to be paid to Mrs. Patrick.  After deducting each month the expense of feed and running the farm, the balance, if any, was to be equally divided.  An agreement very similar is referred to in the recent case of *Matter of Pestlin*

v. *Haxton Canning Co.* (299 N. Y. 477, 485, 486). This case follows the reasoning in *Taylor* v. *Bradley* (39 N. Y. 129) in which numerous authorities are collated; also, see *Millspaugh* v. *Paduch* (174 Misc. 365). A joint adventure carries with it all rights, duties and obligation of a copartnership, subject to certain limitations, most important of which is that one partner can bind the other only when his act is within the scope of the adventure. (30 Am. Jur., Joint Adventures, § 41, p. 700.) "The leasing of a farm for a term of years under an agreement that the owner shall receive in lieu of rent a stipulated portion of the net profits derived from the sale of the crops produced thereon is generally held to create a joint adventure." (33 C. J., Joint Adventures, § 6, p. 843.)

Defendant Robbins had parted with title to the cattle contributed by him to the joint adventure as well as to his farm equipment when he sold this personal property to Rowe and Gorman, but he had granted to the latter the privilege of auctioning the personal property on the farm. Robbins, according to his testimony, had asked Mrs. Patrick for the privilege of holding the sale on February 26th. She had given her consent, he stated, provided the sale was postponed to February 28th. Were it not for the fact that Mrs. Patrick had something to gain through the auction, if no privity existed as between her and Rowe and Gorman, who were conducting the auction, a verdict could not stand in favor of the plaintiff. One of Mrs. Patrick's cows that was bid in at the auction, together with a pipe line for the operation of the milking machine, attached to the cow barn, furnished that interest and privity.

After auctioning certain household property of defendant Robbins on the day in question, which was cold, with snow flying, the crowd moved into the horse barn. The auctioneer stood on a grain drill weighing nearly a thousand pounds, men stomped the snow from their feet as they came in, various equipment was being sold when suddenly a portion of the floor, some 12 x 30 feet, crashed into the basement. There was evidence that a basswood stringer, some 8 x 10 inches, that supported the joist upon which the floor rested, gave way. There was evidence that the north end of this stringer rested on a sill that showed signs of dry rot. There was also evidence that on the outer surface of the stringer evidence of decay could be seen.

Whether a finding of negligence against Mrs. Patrick, the owner, would necessarily require a like finding against defendant Robbins, it is necessary to scrutinize the evidence carefully in the light of all existing circumstances.

February 28th was the last day under the contract that Robbins could remain on the farm. In fact he had already moved from the dwelling house. Mrs. Patrick was in legal possession and control of the premises. (*Taylor* v. *Bradley, supra.*) She had control of the maintenance of the buildings and paid for all work done on them. During the previous fall she had hired and paid for work performed by carpenters in replacing the sills on the south and west sides of the barn, no work having been done, however, on the north sill, claimed to have been rotted. A supporting post was placed at that time by her carpenter under each of the three stringers that held the barn floor, one of which gave way.

No repairs appear to have been made at any time by Robbins. His occupancy of the barns was temporary at the best. The joint adventure had terminated; the calves had been divided the day before the auction. The cow barn housed Mrs. Patrick's stock as well as his. If the jury believed Robbin's testimony they may well have concluded that he would have been gone and off the farm entirely on February 26th had he not complied with the request of Mrs. Patrick to postpone the auction until February 28th. Robbins testified there was no understanding to effect that persons attending the auction were to be kept out of the horse barn.

Defendant Patrick had attended one or more farm auctions; she knew the public was to come upon her premises; she read the advertisement in a Syracuse paper. She was at the farm the day before the auction. Could it be said that she might not reasonably anticipate that some of those invited to attend might make their way into the barn, provided the weather was bad? Those attending were there by her implied invitation. As stated by ANDREWS, J. (*Meiers* v. *Koch Brewery,* 229 N. Y. 10, 13–14): " ' There must be at least some mutuality of interest in the subject to which the visitor's business relates.' (*Plummer* v. *Dill,* 156 Mass. 428.) We know of no better definition.'' In this particular instance the sale of one cow and the milk pipe line, although slight, constituted some '' mutuality of interest.''

If plaintiff was an invitee as to the premises in general, it cannot be urged he was any less an invitee while in this particular barn. (See *McNally* v. *Oakwood,* 210 App. Div. 612 [4th Dept.], affd. 240 N. Y. 600.) In the case at bar there was no warning nor notice of restriction.

If the jury rejected the story of Mrs. Patrick that Robbins was her agent in preventing people from entering the barn, the verdict as against Mrs. Patrick is not inconsistent with a verdict

exonerating Robbins. We do not have a situation of agency such as exists when a jury holds an owner liable and attempts to exonerate the driver.

Counsel for defendant Patrick relies largely on a decision of the Fourth Department, *Rowell* v. *Hutzler Lumber Co.* (228 App. Div. 158, affd, 255 N. Y. 581) where verdicts were found to be inconsistent. There, one defendant, a tenant in possession, one Feigel, received a favorable verdict, while Hutzer Lumber Co., Inc., owner, and East Side Building Company, Inc., vendee, were found liable. The situation differs entirely in the cited case. There the legal responsibility rested with the tenant Feigel, while in the instant action the owner in legal possession actually made all repairs, as disclosed by the evidence. An examination of the record on appeal in the cited case discloses that no one connected with defendant Hutzer Lumber Company ever visited the building in question or knew anything about the construction thereof.

Neither is the opinion in *Bessey* v. *Driscoll* (202 App. Div. 817), cited by defendant, applicable. There the verdicts were found contradictory as they were based '' on the same essential issue.'' Here the versions given by defendants Patrick and Robbins are distinctly at variance.

There is an additional feature that requires comment. Prior to the court's charge, counsel were requested to hand up requests. The following request of defendant Patrick was covered verbatim in the charge: '' That, if the jury find Mrs. Patrick had no knowledge the horse barn was to be used on the day of the sale, that then there is no duty upon her to inspect the barn and there can be no recovery against her.''

Legal knowledge being of two types, actual and constructive, the term '' knowledge '' must be deemed to include both. Definition of the word '' knowledge '' as taken from *Matter of Eastern Transp. Co.* (37 F. 2d 355, 363), as approved and adopted in *DePinto* v. *O'Donnell Transp. Co.* (180 Misc. 649, 652), is: '' The word ' knowledge ', as used, means some personal cognizance, *or means of knowledge,* of which the owner is bound to avail himself, of a contemplated loss, or of a condition of things likely to produce or contribute to a loss, without adopting appropriate means to prevent it.'' (Italics inserted.)

As defined in 51 C. J. S., Knowledge, p. 466: '' The word ' knowledge ' has been variously defined as meaning acquaintance with things ascertained or ascertainable * * * that which is or may be known.'' Also, see *Davenport* v. *Prentice* (126 App. Div. 451).

Means of knowledge is equivalent to knowledge. (*Equitable Life Assur. Soc. of U. S.* v. *Welch,* 239 Ala. 453, 458; *Bathka* v. *Rahn,* 46 Cal. App. 2d 694; *Zdunek* v. *Thomas,* 215 Wis. 11.)

Therefore, charging, as the court did on " knowledge " in the exact language requested by counsel, no fuel was supplied by which the same counsel can now properly claim that under the charge no verdict against defendant Patrick can stand.

The jury evidently concluded that a patent defect existed in the north sill and in the stringer, the repair of which devolved upon the owner, and not upon the temporary occupant. In addition it was admitted that the stringers were sagging " a couple of inches." The carpenter who repaired the barn for Mrs. Patrick during the fall before the accident admitted placing a post under each stringer. Mrs. Patrick testified she inspected the work. So far as the sagging stringers were concerned, each propped up with a post, the jury may well have come to the natural conclusion that a good crutch is poorer than a sound limb.

The motions for a nonsuit and dismissal of the complaint made by both defendants, upon which decision was reserved, are denied. Defendant Patrick's motion for a new trial is likewise denied.

As to plaintiff's motion for a new trial, although the combined amount of $3,000, including the $1,500 paid by Rowe and Gorman and a like amount instantly returned by the jury is small, still the amount is not so grossly insufficient as to shock the conscience of the court. Plaintiff is sixty-five years of age and is able to earn at this time, with the aid of his tractor, the same amount annually as prior to the accident.

The trial just concluded occupied a full week. It is doubtful, in view of the settlement with Rowe and Gorman, shown in mitigation, whether another jury would grant a larger amount in view of all the circumstances. The jury verdict was unanimous.

Plaintiff's motion for a new trial is likewise denied.