Gary Cecil WARREN, Defendant Below, Appellant,

v.

GOLDINGER BROTHERS, INC., a Delaware Corporation, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted Feb. 11, 1980.

Decided April 8, 1980.

John I. Ellis, Dover (argued) of Ridgely & Ridgely, P. A., Dover, for defendant below, appellant.

Wilmer C. Bettinger, Wilmington (argued) of Schmittinger & Rodriguez, P. A., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., McNEILLY and HORSEY, JJ.

PER CURIAM:

This appeal from the Court of Chancery concerns the termination of an agricultural undertaking, with the primary question being whether timely notice was given—the answer to which turns on whether the parties entered into a landlord-tenant or a joint venture relationship.

Seven months after defendant, in April, 1977, began tilling plaintiff's land and caring for plaintiff's herd of cows pursuant to an oral agreement,[1] plaintiff gave defendant 60 days' written notice to vacate the lands and to relinquish the dairy operation by January 15, 1978—due to disagreements arising between the parties. Defendant refused, claiming that he held a verbal lease of agricultural land requiring four months' notice to terminate, as provided under 25 *Del.C.* § 6702;[2] and since only two months' notice had been given, defendant contended that his lease was extended by operation of law for a second full year, or through 1978. In the meantime, plaintiff removed his dairy herd from the property.

Plaintiff then filed this action, seeking equitable and other relief; defendant counterclaimed; and following discovery, trial was held for the limited purpose of determining which party was entitled to possession of the land in dispute for 1978, or the 1978 crop year. Defendant conceded that there was no set term for the parties' undertaking; and defendant further concedes that if their relationship was that of a joint venture, the November notice was effective to terminate their relationship as of January 15, 1978.

Finding the parties' legal relationship to have been that of joint venturers rather than landlord-tenant of agricultural land, the Trial Court ruled that plaintiff's written notice effectively terminated the parties' legal relationship on January 15, 1978

—subject to an accounting between the parties.

The Court also found the beginning date of the parties' undertaking to have been April 1, 1977; and by virtue of 25 *Del.C.* § 6702,[3] the undertaking, even if a "lease", having been for an indefinite term was deemed to be for one year. Therefore, the Court added, by way of dictum, that even if the parties' legal relationship was that of a landlord-tenant, the notice given by plaintiff had been sufficient under § 6702 to terminate defendant's right to possession of the land as of March 30, 1978—since given four months prior thereto.[4]

The question presented to the Trial Court as to the parties' relationship was predominantly a factual one—of applying the facts as found to criteria defining the differing legal relationships of landlord-tenant and joint venture. As to a joint venture, in *J. Leo Johnson, Inc. v. Carmer*, Del.Supr., 38 Del.Ch. 579, 156 A.2d 499 (1959), this Court stated that its existence:

". . . may be implied or proven by facts and circumstances showing that [a relationship of joint venture] was in fact entered into (citation omitted). A joint adventure has been broadly defined as an enterprise undertaken by several persons jointly to carry out a single business enterprise, not amounting to a partnership, for their mutual benefit, in which they combine their property, money, effects, skill and knowledge. The contribution of the parties need not necessarily be the same; one party may contribute land,

1. The parties, with the aid of an attorney, reduced their agreement to writing, but that agreement was never signed. However, they agree that with the exception of the 60 day notice of termination provision, the written instrument reflects the intention of the parties.

2. 60 *Del.Laws*, c. 175, repealed by 61 *Del.Laws*, c. 242, effective March 29, 1978.

3. 25 *Del.C.* § 6702, as enacted by 60 *Del.Laws*, c. 175, then provided as follows:

"In every lease or demise of agricultural land where no term is expressly provided for, such lease shall be deemed and construed to be a lease for one year.

During the period of the lease of agricultural lands where no term is provided for, the landlord or tenant must give Notice in writing, at

least four months in advance of the expiration date thereof, that the tenant intends to remove from the demised premises or that the landlord wishes to resume possession or lease to another. If no such Notice is given, each party is entitled to assume that the lease shall continue in force for another full year from the expiration date, as determined by the agreement or by this section."

4. Defendant disputes this, contending that the notice was even insufficient to terminate the "lease" on March 30, 1978 because the notice gave a premature termination date, and therefore was a nullity. Since we affirm the joint venture finding, we do not reach this question.

another skill and experience, the third cash (citations omitted)." 156 A.2d at 502.

Applying the standards as set forth in *Johnson* to the evidence presented, the Trial Court concluded:

"It is clear from the evidence that the legal relationship of the parties was a joint venture and not that of a landlord-tenant. The evidence shows that the parties agreed that plaintiff was to furnish the land and the dairy cows and that [defendant] was to furnish all labor and machinery required. All other expenses and profits were to be shared equally. All major decisions, such as which crops were to be planted, and which cows were to be selected for, or removed from, the herd, were to be jointly made. This type of relationship has the indicia of a joint venture. *J. Leo Johnson v. Carmer*, Del. Supr. [38 Del.Ch. 579], 156 A.2d 499 (1959); *Kilgore Seed Co. v. Lewin*, Fla. App., 141 So.2d 809 (1962). It lacks the usual essentials of a lease. See 51 [C] C.J.S., *Landlord & Tenant* § 2[(1)]."

■ Defendant recognizes that this Court's standard of review as to findings of facts and conclusions of law of the Court of Chancery permits reversal only if there be no substantial evidence to support such ultimate findings so as to demonstrate them to be "clearly wrong." *Lank v. Steiner*, Del. Supr., 43 Del.Ch. 262, 224 A.2d 242 (1966). Defendant says he has met this burden by pointing to the use in the unexecuted agreement of the terms "landlord" and "tenant" to describe the parties and the use of the word "rent" in describing transfer of possession of the land from "landlord" to "tenant." Placing primary reliance upon those words, defendant argues that the Trial Court was required to conclude that a landlord-tenant relationship was created between the parties. However, the Trial Court expressly considered the use of those terms traditionally found in a lease of real estate and concluded that, notwithstanding their usage, "the legal relationship contemplated by the parties was that of a joint venture and not that of landlord-tenant."

■ There was clearly sufficient evidence to support the Trial Court's finding of a joint venture. That portion of the unreported opinion of the Court below set forth above contains evidentiary findings which satisfy generally recognized elements of a joint venture. As stated in *Kilgore Seed Co. v. Lewin*, Fla.App., 141 So.2d 809 (1962),

"To create such a relationship, there must be (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits, (5) a duty to share in the losses which may be sustained." 141 So.2d 809 at 810–811.

For general authority that farming operations may be conducted as joint ventures, see 46 Am.Jur.2d, *Joint Ventures*, § 7; 48 A.L.R. 1055 (1927). See also *Baker Farmers Co. v. Harter and ASF Corp.*, Ill.App., 28 Ill.App.3d 393, 328 N.E.2d 369 (1975) (discussion of distinction between a share-cropping lease arrangement and a joint venture farming operation with shared expenses and profits); and *Reynolds v. Patrick*, N.Y.Supr., 198 Misc. 201, 97 N.Y.S.2d 126 (1950) (holding parties in a dairy operation to have been joint venturers and not in a landlord-tenant relationship, notwithstanding that their agreement was termed a "lease").

■ Defendant further claims that the Court below erred in not ruling whether a particular farm of plaintiff's known as the "Severson Farm" was included within the lands subject to the parties' undertaking so as to be controlled by the case holding. Since the decision of the Court below did not describe any of the lands subject to the undertaking of the parties, we decline to rule on this question.

Affirmed.