## TURNBULL *v.* LEAVITT.

1. FRAUD—DEEDS—CANCELLATION AND RESCISSION.

   Insufficient proof of fraud to warrant the cancellation of a deed of real estate is made by a showing that the grantor did not know the exact state of an involved and defective title, and executed, without any active deceit of the grantees, a conveyance of the land for a consideration which subsequently proved to be inadequate, the title having been afterwards cleared by proceedings in chancery.

2. REAL PROPERTY—LIFE ESTATES—DEVISES.

   A devise of real and personal property to the devisee absolutely during her lifetime, and at her death the remaining portion to the testator's sons, conveys the real estate in fee to the devisee.

3. DEEDS—DESCRIPTION OF PARTIES—EFFECT.

   A quitclaim deed from a person having title to real property by a devise is not affected by a description of the grantor as administratrix, and conveys her personal interest subject to the rights of creditors of the estate.

Appeal from Presque Isle; Emerick, J. Submitted October 5, 1909. (Docket No. 7.) Decided November 5, 1909.

Bill by Franc A. Turnbull, L. Burt Turnbull, and James D. Turnbull, Jr., against Charles R. Leavitt and John McPhee to set aside a deed and to quiet title to certain real estate. From a decree dismissing the bill, complainants appeal. Affirmed.

*Henry K. Gustin*, for complainants.

*Joseph H. Cobb*, for defendants.

OSTRANDER, J. At the date of his death, James D. Turnbull was the owner of certain lands. In his last will is the provision:

"After payment of my just debts and funeral expenses, I give and bequeath and devise all of my real and personal estate to my beloved wife, Franc A. Turnbull, to be hers absolutely during her lifetime, and at her death what of the same may be left to my two sons, L. B. Turnbull and J. D. Turnbull, share and share alike, and their heirs forever. And I hereby appoint said Franc A. Turnbull executrix of this my will, and said L. B. Turnbull executor of this my will."

The will was duly admitted to probate, and the widow qualified as executrix thereof. The inventory of his estate made in October, 1900, did not mention the lands in question. Franc A. Turnbull (the widow, devisee, and executrix) executed and delivered to defendants a quitclaim deed of the lands, for which they paid her the sum of $100. In the deed the grantor is described parenthetically as administratrix of the estate of James D. Turnbull and in the certificate of acknowledgment as administratrix. The estate was closed and the executrix discharged. Afterwards, in July, 1903, the widow, her two sons, heirs of James D. Turnbull, joining with her, filed a bill of complaint, in which it is charged that upon the closing of the estate the title to the said lands passed to complainants; that they are worth between $2,000 and $3,000; that the executrix was not familiar with the affairs of the estate or with business matters; and that the actual business of closing up the estate was intrusted "to William H. Johnson and others." The other complainants charge that they were not familiar with the value of the property, and were unable to advise the executrix. It is further charged that defendants applied to her as administratrix to purchase said lands, offering her $100 therefor, and representing they were worth no more than that sum, and that they were willing to pay that sum for a quitclaim "from the said Franc A. Turnbull as administratrix of the said estate;" that she has been informed that she had no authority to execute the deed, and, as soon as she was so informed, she offered to repay to defendants the money they had paid to her if they

would reconvey said lands. This they refused to do. It is also charged that complainant Franc A. Turnbull, in 1886, joined with her husband in deeding the said lands and others to Andrew W. Comstock, but for security only; that the money to secure payment of which said deed was given was afterwards repaid to said Comstock; and that he and his wife, in April, 1898, executed a quitclaim deed of said lands to James D. Turnbull, who neglected to record the same. Defendants, knowing the real interest of complainants in the lands, procured from said Comstock a quitclaim deed of them, paying no compensation therefor, which deed they have recorded, and they claim to own the lands; that the said deeds create a cloud upon the title of complainants. It is charged, also, that there was a large amount of taxes due and unpaid upon the lands, and that complainants have, in certain proceedings instituted by them, removed the cloud occasioned by the taxes and paid a large amount for taxes. As relief it is prayed:

(1) That defendants be enjoined from disposing of the lands.

(2) That the deed from Comstock to defendants be canceled.

(3) That the deed executed by complainant, Franc A. Turnbull, be canceled upon the payment to defendants of $100.

(4) General relief.

Defendants Leavitt and McPhee answered the bill, claiming also the benefit of a cross-bill.

It is admitted that nothing was paid to Comstock for the quitclaim deed, and asserted that it was obtained at the instance and request of the executrix; that the executrix agreed to proceed and obtain, as soon as possible, a license from the probate court to sell the lands so as to perfect defendants' title. They also assert that $100 was the fair value of the lands, reference being had to the condition of the title, most of them having been sold for delinquent taxes, and a portion of them being claimed by

the State as State tax homestead lands. They were later told by complainants that, unless they paid an additional sum for the lands, no title would be procured for them through probate court, but that for $150 they would execute a new deed of conveyance if defendants would permit them to retain one-half of the oil, gases, and minerals in said lands. They are now advised, they say, that Franc A. Turnbull had title to the lands and the right to convey them, and that the deed in question conveys all of her interest as devisee of her husband, and that they are the owners of the lands. They ask that complainants be required to execute to them a good and sufficient deed of conveyance, offering to repay to complainants such sums as they have paid by way of taxes upon the lands. There was a replication, a hearing was had in open court, and a decree of date August 3, 1908, dismissing the bill of complaint. Complainant Franc A. Turnbull died December 28, 1904.

In the brief for complainants, appellants, it is contended :

(1) That the deed from Mrs. Turnbull conveyed no title to defendants, and is a mere cloud upon the title.

(2) That the said deed was obtained by fraud and misrepresentation and for an inadequate consideration.

It appears there were 2,000 acres or thereabouts described in the conveyance in question, all in town 33 north, of range 7 east, there being 600 acres on section 11, 320 acres on section 12, the entire of section 13, and 440 acres on section 14, also 80 acres on section 24. All of the land except 120 acres on section 12, 440 acres on section 13, and 40 acres on section 24 had been in 1896 deeded to the State as tax homestead lands; the taxes thereon being canceled. The lands had been lumbered by Mr. Turnbull. There was 160 acres on section 13 against which no unpaid taxes appeared. The remainder of the land was held for taxes aggregating about $350. It appears, further, that after the deed in question was executed, and in July, 1903, after defendants had filed petitions to set aside the taxes and to cancel the State tax homestead interest, the estate

of James D. Turnbull also filed petitions for a similar purpose, with the result that such homestead interest and title was set aside as to the lands on section 13, 280 acres on section 14, and 40 acres on section 24. It was further decreed in said proceeding that the title of the State was absolute to 160 acres on section 14, and 40 acres on section 12. Particulars as to the other lands are not given; it being stipulated that decrees were entered "setting aside and holding for naught a large portion of the taxes appearing against said lands." The estate was insolvent and was closed in July, 1902.

Considering first the second contention made by complainants, we find no evidence of fraud practiced upon her or upon the estate. Defendants desired the lands to be used with others for a cattle range. They looked them over. They understood that they had been sold for taxes. They supposed that some at least of the tax title interests could be set aside. They had no conversation with the executrix, but made their offer for a deed to her attorney. It is true that she employed a man to examine and make a report concerning these lands and received his report, and it appears that defendants employed the same man to show them the lands, and that he told them that the best way to do was to get a quitclaim from Mrs. Turnbull, and that he thought they could get a deed for $100, but it does not appear there was any connivance to obtain a deed or that any one regarded the interest of the estate in the lands as of value. There was, in fact, some timber on some of the lands, a witness produced by complainants estimating the value of lands and timber at $7,000, but we find in the record no estimates of timber on particular descriptions which afford aid in determining the apparent value of the interest devised to Mrs. Turnbull. Undoubtedly, $100 was an inadequate consideration for a good title to the lands. It cannot be doubted that the parties dealt with them in view of the apparent title.

Does the deed in question convey any interest in the land? Her attorney, who drew it, testified that what de-

fendants were buying was all the right, title, and interest of Mrs. Turnbull in the lands. But, assuming that the deed must speak for itself, it appears that the grantor was devisee of the lands, and, upon the probating of the will, had complete legal title to the same; her beneficial interest being limited by the condition of the estate. If the estate was insolvent, as it appears to have been, she had no beneficial interest. The estate, however, is not claiming the lands, and in the administration proceedings no action was had relative to the lands. The estate having been closed, the devisee and her heirs seek to avoid the deed, which upon its face conveys the legal title to the lands. The argument that the will gave to Mrs. Turnbull nothing but a life estate in the lands is answered by the decision of this court in *Turnbull* v. *Johnson,* 153 Mich. 229 (116 N. W. 1009), and cases cited. The description of the grantor in the deed as administratrix adds nothing to, and takes nothing from, the effect of the deed in a suit brought by her or her heirs to avoid it. Subject to the rights of creditors, she had the right to convey what she personally possessed, namely, the legal title to the land. That she did convey it is clear.

The decree is affirmed, with costs to appellees.

BLAIR, C. J., and GRANT, MONTGOMERY, and HOOKER, JJ., concurred.