FOWLER *v.* CORNWELL.

1. DESCENT AND DISTRIBUTION—WIDOWS—ADOPTED CHILDREN.
   The estate of a man who died solvent and intestate in 1920, leaving a widow and adopted son, passed to such persons as his sole heirs at law (CL 1929, § 13440).

2. DEEDS—EXECUTION BY AGENT—COMMON LAW.
   At common law a deed by an attorney or agent must be executed in the name and under the seal of the principal in order that he be bound as a covenanter.

3. SAME—EXECUTION—EQUITY.
   The strict formalities of the common law as to execution of deeds are often relaxed in order to carry out the intention of the parties when all interested parties are before a court of equity.

4. VENDOR AND PURCHASER—LAND CONTRACT EXECUTED BY AGENT.
   A contract to convey land may be binding on the principal although made in the name of the agent and even though there be a technical defect in the form of execution.

5. FRAUDS, STATUTE OF—CREATION OF ESTATE BY PAROL.
   The creation of an estate or interest in land by parol is prevented by the statute of frauds.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur, Descent and Distribution, §§ 38, 90, 91.
[2–4] 2 Am Jur, Agency, §§ 245, 246, 248.
[4, 9, 10] 2 Am Jur, Agency, §§ 243, 244.
[5] 49 Am Jur, Statute of Frauds, §§ 149, 168.
[6] 49 Am Jur, Statute of Frauds, § 313.
[7, 9, 10] 49 Am Jur, Statute of Frauds, § 413.
[8] 49 Am Jur, Statute of Frauds, § 578.
[10] 55 Am Jur, Vendor and Purchaser, §§ 356, 357.
[11, 12] 55 Am Jur, Vendor and Purchaser, §§ 651, 652, 655, 688, 691, 693, 712.
[11, 12] Right of vendee under unrecorded executory land contract as against subsequent deed or mortgage executed by, or judgment rendered against vendor.  87 ALR 1505.

6. SAME—MEMORANDUM.

The memorandum necessary to satisfy the statute of frauds as to the creation of an estate or interest in land must be in writing and signed by the grantor or by some party thereto by him lawfully authorized in writing (CL 1948, § 566.132).

7. SAME—MEMORANDUM—SIGNATURE OF AGENT.

A memorandum creating an estate or interest in land, signed by an authorized agent or attorney, is sufficient in a court of equity although signed in the agent's own name (CL 1948, § 566.132).

8. SAME—PURPOSE.

The statute of frauds should be used to prevent a fraud, not to perpetrate it (CL 1948, § 566.132).

9. VENDOR AND PURCHASER—EXECUTION OF LAND CONTRACT—SIGNATURE OF AGENT—SURPLUSAGE.

Designation of grantor as "executor" of deceased's estate in land contract, executed by administrator and entered into by him under circumstances showing he entered into it solely under and by virtue of powers of attorney from each person interested in the estate, rendered the addition of the designation after his name as merely *descriptio personae*, or surplusage.

10. SAME—EXECUTION BY ADMINISTRATOR—POWERS OF ATTORNEY.

Land contract, executed by administrator of estate of intestate, but signed by him as "executor" under circumstances showing he entered into it solely under and by virtue of powers of attorney from each person interested in the estate duly authorizing him to do so and given for purpose of avoiding necessity of obtaining license to sell from probate court, and agreeing to give a warranty instead of an administrator's deed *held*, efficacious to vest equitable title in vendee with legal title in heirs of intestate as security for payment of purchase price, which became but a bare legal title upon full payment of the price.

11. DEEDS—QUITCLAIM DEEDS FROM HOLDERS OF BARE LEGAL TITLE.

Defendant real estate broker and resort operator who first had permission to pasture cow on unimproved land involved, later discovered that no deed had been recorded in fulfillment of land contract by which plaintiff's late husband had purchased the land and obtained quitclaim deeds from holders of bare legal title but with notice that plaintiff and her husband had an interest under the land contract and had paid taxes and

exercised acts of domination for some 27 years *held,* to have acquired no better title than his grantors.

12. VENDOR AND PURCHASER—QUIETING TITLE—EVIDENCE.

Holder of vendee interest under contract of sale of unimproved land *held,* entitled to have title quieted in her where evidence shows that she and her late husband had paid purchase price in full, and had paid taxes and exercised acts of domination for some 27 years, notwithstanding failure of administrator of vendor estate to obtain probate court license to sell, where he did sign as "executor" and evidence shows he acted pursuant to recorded powers of attorney from all parties in interest in intestate's estate.

Appeal from Otsego; Shaffer (John C.), J. Submitted April 12, 1950. (Docket No. 53, Calendar No. 44,757.) Decided June 5, 1950.

Bill by Mabel C. Fowler against Virgil Cornwell and others to quiet title in land and to compel execution of deeds. Cross bill by defendants Cornwell against plaintiff to quiet title in them. Decree for plaintiff. Defendants appeal. Affirmed.

*Charles E. Moore (Elmer G. Smith,* of counsel), for plaintiff.

*Morrow & Kull,* for defendants.

BUTZEL, J. Mabel C. Fowler brought an action in the circuit court for the county of Otsego, in chancery, against Virgil Cornwell, Eileen Cornwell, Bessie F. Bidwell and the Michigan Children's Aid Society to quiet title to several tracts of land in Bagley township, Otsego county, purchased on land contract by the plaintiff's deceased husband. She also asks that the contract be declared paid and that deeds be executed in accordance with its terms. The 2 last named defendants filed disclaimers. Virgil Cornwell and Eileen Cornwell answered the bill of

complaint and filed a cross bill praying that title be quieted in themselves. Defendants Cornwell have appealed from a decree granting plaintiff the full relief prayed for.

The 240 acres of vacant land involved in this action were owned by Robert King during his lifetime and upon his death intestate in August, 1920, title passed to Sarah King, his widow, and Robert K. Jardine, an adopted son, his sole heirs at law. CL 1929, § 13440; *Diel* v. *Diel,* 298 Mich 127. His estate, which was administered in Lapeer county, was solvent and included extensive real estate holdings including 136 different parcels in Otsego county and numerous others in Crawford and Lapeer counties. There was also a very appreciable amount of personalty. James H. Bidwell, brother of the widow, was appointed and served as administrator.

In September, 1920, Sarah King executed a power of attorney to J. H. Bidwell to "make conveyances and do and perform every and any manner or kind of business whatsoever which I could myself lawfully do or which I can empower an attorney in fact to do for me, giving and granting unto J. H. Bidwell my said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as I myself might or would do if personally present, with full power to [of?] substitution and without power of revocation hereby ratifying and confirm all that my said attorney or his substitute shall lawfully do or cause to be done."

In September, 1920, Robert K. Jardine also executed a power of attorney to J. H. Bidwell to "perform every and any manner or kind of business whatsoever in connection with the Robert King estate which I could myself lawfully do or which I can empower an attorney in fact to do for me including

conveyances of real estate, giving and granting unto J. H. Bidwell said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes, as I might or would do if personally present, with full power to [of?] substitution and revocation hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done." In August, 1921, Ethel Q. Jardine, Robert Jardine's wife, executed a power of attorney to J. H. Bidwell almost identically worded. All 3 powers were recorded in Otsego county in August, 1921.

It is quite apparent from the record that the purpose of these powers was to enable Bidwell to convey and otherwise dispose of the property in the estate without the necessity of obtaining a license from the probate court administering the estate. No such license was ever petitioned for or granted during the 7-year period of administration, although a major portion of the real estate that had been owned by Robert King was sold to others by Bidwell. All of the deeds introduced in evidence at the trial which had been executed by Bidwell in these transactions, with but one exception, named "J. H. Bidwell, executor of the Robert King Estate" as grantor.

On December 13, 1921, a land contract was executed between "J. H. Bidwell, executor of the Robert King Estate" as vendor and Harry N. Fowler as vendee, for the sale of the land involved in the instant litigation. One-quarter of the purchase price was immediately paid at the bank where the contract was delivered to Fowler, the balance being due in 3 equal annual payments. Fowler was given the right to possession and was to receive "good and sufficient" warranty deed upon completion of payment. The contract was prepared by a real estate broker.

Fowler conveyed the property by warranty deed to one Minnie Rhodes in 1927 and she reconveyed it to him and his wife, the present plaintiff, later in the same year. The record indicates that at all times after entering into the land contract dominion of ownership over the land was exercised by Mr. Fowler. No testimony was introduced to controvert plaintiff's claim that payment of the taxes for the last 27 years was made by the Fowlers, and some of the evidence indicates clearly that these payments were not made by defendants' grantors. Since 1927, the Fowlers executed 4 different conveyances granting rights of way over the premises and made 5 oil and gas leases. Mr. Fowler died in 1947 and plaintiff, as survivor, claims ownership of the land in fee. The land remained unimproved during this entire period.

There is no deed on record from Bidwell or his principals to Fowler and the record is inconclusive as to whether one was ever executed and delivered. If such a deed existed it has been lost or misplaced. Plaintiff claims that the contract was fully paid and the evidence substantiates this assertion. In October, 1920, a detailed inventory of the assets of the Robert King estate was filed. Each of his numerous parcels of land, including those here involved, was carefully and separately listed. In the administrator's final account, filed and approved in 1928, and in the order assigning the residue, each parcel of real estate still retained was again individually listed, as was each land contract on which there was an unpaid balance. This particular property is not listed in the 1928 inventory as an asset of the estate, nor does the contract appear among those set forth as having an unpaid balance. Neither the contract nor the property are mentioned in a subsequent administration on reopening. The parcels omitted from Bidwell's final inventory are accounted for by large

sums of money that were shown to have been received from land contracts and the sale of land. It is quite evident that were a balance owing on the Fowler contract, the account, which is meticulous, would have so indicated. The fact that no attempt was ever made to forfeit the contract in the 27 years since it was executed is but a further indication that there was no default in payment and that the contract was paid.

Sarah King died testate in December, 1921, leaving all of her property, with the exception of some specified cash bequests, to J. H. Bidwell. Bidwell died in 1928 and neither this property nor an unpaid balance on the land contract was listed as an asset of his estate.

Defendant Virgil Cornwell is a real estate broker and resort operator and Eileen Cornwell is his wife. In 1945, Mr. Cornwell sought permission from Mr. Fowler to pasture his cow on the land. Subsequently, he became interested in acquiring title to the land and made a search of the records. After Mr. Fowler's death in 1947, defendant Cornwell discovered that no deed had been recorded in fulfillment of the land contract. In 1948, defendants obtained a quitclaim deed from the Jardines, record titleholders of a two-thirds interest in the land, for $25. In the same year they paid Sarah Bidwell King, daughter and one of the heirs of J. H. Bidwell, $625 for a quitclaim deed for her interest. Each of the other 2 defendants, who filed disclaimers to any interest in the land, was record owner through the Bidwell estate of an interest equal to that of Sarah King.

Sarah Bidwell King testified that she had "never made any claim to this land" and that when defendants made her an offer she referred them to her attorneys who handled all the negotiations. There is not a single iota of evidence in the record indicating that the Jardines or the heirs of Bidwell ever

asserted any claim to the land since the execution of the land contract or had paid any taxes thereon. They have never protested the granting of the rights of way and leases or exercised any acts of dominion.

After receiving the 2 quitclaim deeds Cornwell discussed purchasing the land from the plaintiff. Plaintiff claims, and defendant denies, that he made her an offer of $10,000. Cornwell later made an offer of $7,000 to plaintiff's attorney, who was also her financial adviser. He may have later increased the amount offered to $8,000.

Defendants contend that the land contract between "J. H. Bidwell administrator of the Robert King Estate" and Mr. Fowler is a nullity. They assert that Bidwell was acting solely in his capacity as administrator and that his failure to obtain a license to sell from the probate court renders the execution of the contract ineffectual to create any title in plaintiff or bind the heirs of Robert King. CL 1915, § 13987 (the present re-enacted form of this statute is CL 1948, § 709.2 [Stat Ann 1943 Rev § 27.3178 (462)]); *Thayer* v. *Lane,* Walk Ch (Mich) 200; *Campbell, Appellant,* 2 Doug (Mich) 141; *Baxter* v. *Robinson,* 11 Mich 520; *People, ex rel. Lothrop,* v. *Board of Public Works of Detroit,* 41 Mich 724; *Frost* v. *Atwood,* 73 Mich 67 (16 Am St Rep 560); *Houlihan* v. *Fogarty,* 162 Mich 492; *Webber* v. *Detroit Fidelity & Surety Co.,* 263 Mich 144; *Burnham* v. *Kelley,* 299 Mich 452. They further assert that the contract could not have been executed pursuant to the authority granted. They also claim that the naming of Bidwell, instead of his principals, as grantor, rendered the instrument ineffectual to bind his principals.

It is a common-law rule that a deed by an attorney or agent must be executed in the name and under the seal of the principal in order that he be bound as a covenanter. *Combe's Case,* 9 Coke 75a (77 ER

843); *City of Detroit* v. *Jackson,* 1 Doug (Mich) 106. See the annotations in 41 LRA NS 805. This rule has been adopted by the American Law Institute, 1 Restatement, Agency, § 151.

In equity, when all the interested parties are before the court, the strict formalities of the common law are often relaxed in order to carry out the intention of the parties. A contract to convey has been held binding on the principal although made in the name of the agent. *Record* v. *Littlefield,* 218 Mass 483 (106 NE 142). The principal has been required to carry out the agreement in cases where a deed executed by an authorized agent was not the principal's deed by virtue of a technical defect in the form of execution. See the annotation of cases in 41 LRA NS 805, 826.

The creation of an estate or interest in land by parol is prevented by the statute of frauds. The memorandum necessary to satisfy the statute must be in writing and signed by the grantor or by some party thereto by him lawfully authorized in writing.\* When such a memorandum is signed by an authorized agent or attorney, it is sufficient in a court of equity although signed in the agent's own name. *Michelson* v. *Sherman,* 310 Mass 774 (39 NE2d 633, 139 ALR 960). The statute of frauds should be used to prevent a fraud, not to perpetrate one. *Cramer* v. *Ballard,* 315 Mich 496.

In the instant case Bidwell was authorized in writing to make conveyances and perform any and every kind and manner of business whatsoever that could be performed by his principals. The surrounding circumstances are wholly convincing that he entered into this contract solely under and by virtue of the powers of attorney and that his actions were within the scope of authority conferred. The addition of

---

\* See CL 1948, § 566.132 (Stat Ann § 26.922).—REPORTER.

the designation after his name was merely *descriptio personae,* and as such was surplusage. *Sanborn* v. *Loud,* 150 Mich 154 (121 Am St Rep 614); *Turnbull* v. *Leavitt,* 158 Mich 545; *Pungs* v. *Hilgendorf,* 289 Mich 46; *In re Fowle's Estate,* 292 Mich 500. In this respect it might again be noted that the conveyance was to be by a good and sufficient warranty deed and not an administrator's deed; that Bidwell's entire course of dealings was to execute land contracts and to make cash sales without petitioning for a license to sell; and that he personally had no title to the realty at the time of execution of the land contract.

This case presents an example of the difficulties that can arise from the employment of a real estate broker rather than an attorney at law in the preparation of legal documents. However, for the reasons previously stated the contract was efficacious to vest equitable title in the property in Mr. Fowler, although the Jardines and Sarah Bidwell King retained the legal title as security for the payment of the purchase price. *Hooper* v. *Van Husan,* 105 Mich 592; *Wood* v. *Schoolcraft,* 145 Mich 653; *Stevens* v. *DeBar,* 229 Mich 251; *In re Estate of Jeffers,* 272 Mich 127; *Barker* v. *Klinger,* 302 Mich 282. In view of the finding that the evidence substantiates the claim of full payment, defendant's grantors held at most only a bare legal title, and that in trust for the vendee. *Curry* v. *Curry,* 213 Mich 309. Defendant, who purchased with notice of plaintiff's equitable rights, acquired no better title than held by his grantors.

Decree is affirmed, with costs to plaintiff.

Boyles, C. J., and Reid, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.