RENAUD *v.* MOON.

1. BROKERS—COMMISSIONS—FRAUDS, STATUTE OF.
   An agreement for the division of a commission to be
   earned on the sale of a farm, to be valid, must be in
   writing (3 Comp. Laws 1915, § 11981).

2. JOINT ADVENTURES—ACCOUNTING—EVIDENCE—SUFFICIENCY.
   In a suit for an accounting for plaintiff's share of profits
   made as commission on the sale of a farm, on the theory
   that plaintiff and defendant engaged in a joint adventure,
   testimony of plaintiff as to the agreement made *held*,
   too hazy and indefinite to afford basis for relief.

Appeal from Wayne; Mandell (Henry A.), J.    Sub-
mitted April 18, 1924.    (Docket No. 95.)    Decided
June 2, 1924.

Bill by Fred J. Renaud against Elmer S. Moon for
an accounting.    From a decree dismissing the bill,
plaintiff appeals.    Affirmed.

*Paul Oren (Leslie L. Alexander,* of counsel), for
plaintiff.

*Campbell, Dewey, Stanton & Bushnell,* for defend-
ant.

MOORE, J.   From a decree dismissing the bill of
complaint this case is brought into this court by ap-
peal.    It is the theory of the bill that the parties
engaged in a joint adventure that resulted in a profit
that plaintiff was entitled to share.    The prayer is
for an accounting and for a decree for the amount
found due to the plaintiff.    The defendant denied
there was a joint adventure, denied there was any
occasion for an accounting and denied that plaintiff

was entitled to a decree.   The case was heard in open court with the result before stated.

Both parties agree that upon a casual meeting of the parties to this litigation the plaintiff told the defendant that a Mr. Reid had a farm for sale.   As to what happened afterwards there is much disagreement.   It is established, however, that October 11, 1919, an agreement was made in writing between Elmer S. Moon & Company and Mr. Reid for the payment of a commission of $5,000 "if they sell or are instrumental in bringing about a sale" of the farm of Mr. Reid.   It also appears that three days later Moon & Company brought to Mr. Reid one Mr. Stoneman who bought the farm, and Mr. Moon was paid his commission.   No writing passed between Mr. Renaud and Mr. Moon, and none passed between Mr. Reid and Mr. Renaud and it is not claimed that Mr. Renaud had anything to do with producing Mr. Stoneman as a purchaser.

It is the claim of Mr. Moon that he recognized that the information given to him by Mr. Renaud was valuable to him and to indicate his appreciation he offered him $500, though he was under no legal obligation to pay him anything.   Mr. Renaud refused to accept the offer of Mr. Moon and this litigation followed.

Both parties to the litigation were sworn as witnesses.   Their testimony did not agree.   The testimony of the plaintiff was so indefinite that the trial judge questioned the plaintiff—we quote from the record:

"*The Court:* You say that you and the defendant on a certain date in the spring of that year, 1920, got together, and that at that time you told him about the piece of property owned by Mr. Reid; and that Mr. Moon said to you—I am quoting from your testimony that I had written up: 'Would you be well enough acquainted to get an option on this corner?'

"*A.* Yes.

"*The Court:* 'Well,' I said 'the option is just expiring that had been standing on this place,'—it was just about to expire. And he said that he was about ready to sell the place if he had a chance. And he said, 'Do you know him well enough that you could go out there and get an option?' I said, 'Why, I could. I know him well enough.' And in substance he said, 'Go on and do it.' Now, you then did go out to see Mr. Reid. Was there anything said in your conversation with Mr. Moon as to what would be done with an option if you secured one?

"*A.* Yes, there was.

"*The Court:* What was it?

"*A.* He said that of course there was a chance of making a commission.

"*The Court:* Commission?

"*A.* If we sold the property, or we could form a company and take the property over, and figure if we could handle it, divide it up right away and sell it. I understood that we intended to organize a little company. I told Mr. Moon that I thought I could get one or two parties interested in it, to go ahead and form this company. 'Well' he said, 'we will see what we can do with it.' And I told him then, I said, 'Now Mr. Reid will not pay a commission. He wants one hundred fifty thousand dollars net for his place.' And he said, 'very well, we will make our profit at the other end of the deal.'

"*The Court:* Yes, you stated that. Well, did you understand that there was to be an actual purchase, or did you understand that you were buying for the purpose of selling?

"*A.* I didn't understand how it was going to be sold or handled.

"*The Court:* Was there anything said about it?

"*A.* Not definitely; not that I remember."

Counsel recognize that if what occurred was an agreement for the division of a commission that to be valid it must be in writing. Section 11981, 3 Comp. Laws 1915; *Smith* v. *Starke,* 196 Mich. 311.

If full probative force is given to the testimony of the plaintiff, what does it establish? Did it call for the purchase and platting of the land and its sale?

If so, by whom and when?    Was a little company to be organized and, if so, who were to be its members? Was it to be capitalized, if so, for what amount?    We think according to the version of the plaintiff the talk between the parties was so hazy and ·indefinite as not to afford a basis for any relief to be decreed by a court to him.

The decree is affirmed, with costs to the appellee.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.