156 A.2d 499 (1959)
J. LEO JOHNSON, INC., a corporation of the State of Vermont, et al., Defendants Below, Appellants,
v.
Dana E. CARMER, Plaintiff Below, Appellee.
Supreme Court of Delaware.
December 21, 1959.
Harold Schmittinger, Dover, for defendant below, appellant.
Herbert L. Cobin, Wilmington, for plaintiff below, appellee.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
*500 BRAMHALL, Justice.
The question in this case relates to the alleged existence of the relationship of joint adventurers and the responsibility of the parties in the furtherance of the enterprise.
Plaintiff with one Norman C. Hicks and Leslie Fenwick negotiated with the Pennsylvania Railroad Company for the purchase of ballast and ties on the northbound track of the "Cape Charles line". It at once became apparent that the Railroad Company would enter into a contractual relationship only with a corporation. The president of the corporate defendant (hereafter defendant) was approached by Fenwick with a request that on behalf of plaintiff, Hicks and Fenwick, it enter into a contract with the Railroad Company for the purchase and removal of the ballast and ties. A contract was entered into, dated January 20, 1956, between defendant and the Railroad Company, under which defendant purchased from the Railroad the ties and ballast from one section of the tract for a consideration of $5,000. Although in the contract there was no reference to any other section, plaintiff claims that it was understood that if the work on the first section was performed satisfactorily, the defendant would be permitted by the Railroad Company to purchase on behalf of plaintiff and the others the second section of track. Under the same date a contract was executed between defendant and plaintiff, in which it was agreed that plaintiff and defendant were to remove the ballast and ties and that plaintiff would pay to defendant and defendant to the Railroad Company the sum of $5,000 which defendant had obligated to pay the Railroad.
It was also agreed that plaintiff would indemnify the defendant from loss by reason of its obligation to the Railroad. Under paragraph 12 of the agreement all money received was to be deposited in the Middletown Branch of the Delaware Trust Company and withdrawn only upon the joint signatures of plaintiff and James E. Knapp, defendant's agent. The proceeds were to be divided on a 50-50 basis "after the expense of the $5,000 payment insurance storage by the provisions above". Later plaintiff *501 testified that he understood that he was to receive a "third right down the line for putting up all the money on the first section, $32,000. I was to receive one-third of the second section regardless of their interest in it". At the trial plaintiff pressed his claim only for a one-third of the profits and the Chancellor found in his favor for that percentage thereof. The difference between the amount to which plaintiff is entitled under the written agreement and the 331/3% for which he has pressed his claim is of no importance in this suit.
Hicks and Fenwick had an arrangement with defendant whereby each was to receive one-third of defendant's share of 50%. Hicks for a time had charge of the operation of the work. When he became ill, plaintiff took over its supervision. Plaintiff in the performance of the work was compelled to advance substantial sums of money for the furtherance of the enterprise. Shortly before the first section was completed Fenwick, on behalf of defendant, without the knowledge of plaintiff, obtained from the Railroad Company a contract in the form of an "Order for Extra Work" for the purchase of the second section. Fenwick testified that plaintiff disclaimed any interest in the second section, but this testimony was denied by plaintiff and was specifically rejected by the Chancellor, who held that plaintiff was entitled to an interest in the second section and to an accounting therefor. This appeal is by defendant from the order of the Chancellor directing that defendant account to plaintiff for a one-third interest in the joint adventure with respect to section two.
Plaintiff contends that the parties entered into a joint adventure for the completion of the whole section. Defendant contends that there was no joint adventure but only a contractual relationship relative to the first section and that plaintiff therefore is entitled to an accounting only for the first section. The basis of defendant's contention is that the agreement between plaintiff and defendant does not provide for the sharing of losses.
The agreement between plaintiff and defendant provides that the defendant shall retain 50% of the net profits from the sale of the ballast and ties. Defendant contends that in addition to the agreement failing to provide for the sharing of losses, the agreement in several of its paragraphs is strongly suggestive that the parties intended that in no event should defendant bear any share of the loss. Defendant calls attention to the fact that paragraph 3 of this agreement provides that if the contractor employed by plaintiff to restore the property as required by the Railroad failed to do so, plaintiff would indemnify defendant for the cost and expense of such restoration; that under paragraph 4, providing that if certain safety measures required by the Railroad were not followed and the Railroad requested defendant to provide a flagman, plaintiff would reimburse defendant for the expense of such flagman; that in paragraph 5 thereof plaintiff agrees to indemnify defendant against any and all losses which defendant may suffer by reason of the removal of the ties and grading operation by plaintiff; that plaintiff should carry substantial insurance for the protection of defendant and the Railroad Company.
It will be observed that all of the paragraphs relied upon by defendant relate, in the first agreement, to the indemnification of the Railroad by defendant and, in the second, by plaintiff to defendant, for any failure to comply with the requirements of the Railroad. There is no provision of any kind in the event the enterprise should prove to be unprofitable. Where plaintiff's responsibility to the Railroad and to defendant relating to the conduct of the work is set forth in such detail, it would seem that, if it was intended by the parties that defendant should not be responsible for any loss because of the fact that the venture was unprofitable, it would have been so specified in the agreement.
A comparison of the agreement between plaintiff and defendant with the agreement executed immediately prior thereto between defendant and the Railroad Company shows *502 clearly that the paragraphs of the agreement above referred to between plaintiff and defendant and relied upon by defendant do not relate in any manner to the division of losses upon completion of the transaction. Except as these paragraphs in the second agreement apply to plaintiff rather than the Railroad Company, the corresponding paragraphs in the two agreements are practically identical. What the Railroad Company was looking for in these paragraphs of its agreement was indemnification; what was intended in the corresponding paragraphs in the agreement between plaintiff and defendant was indemnification of defendant by plaintiff to cover the indemnification by defendant to the Railroad Company in the prior agreement. Certainly the Railroad Company was not interested in the slightest in the division of profits or losses between plaintiff and defendant, or even whether or not there were any. Moreover, in paragraph 6 of each agreement it is specifically stated that "in support of the preceding paragraph" defendant in the first contract and defendant and plaintiff in the second shall maintain policies of insurance "as shall be satisfactory to the Railroad". It is obvious therefore that this paragraph in each agreement relates exclusively to indemnification of the Railroad Company in the first instance and the indemnification of the defendant in the second for definite obligations to the Railroad Company and not to any agreement for the general sharing of losses.
The widely recognized legal relationship of joint adventure is of modern origin. Generally, courts have not laid down any very certain definition of what constitutes a joint adventure, nor have they established a very fixed or certain boundary thereof, contenting themselves in determining whether the facts of a particular case constitute the relationship of joint adventure. Connellee v. Nees, Tex.Com. App., 266 S.W. 502. While there must be some sort of contractual relationship between the parties, it may be implied or proven by facts and circumstances showing that such an enterprise was in fact entered into. See cases cited in Annotation 48 A.L.R. 1055, 1058, Joint Adventure. A joint adventure has been broadly defined as an enterprise undertaken by several persons jointly to carry out a single business enterprise, not amounting to a partnership, for their mutual benefit, in which they combine their property, money, effects, skill and knowledge. The contribution of the parties need not necessarily be the same; one party may contribute land, another skill and experience, the third cash. Lesser v. Smith, 115 Conn. 86, 160 A. 302(4); Summers v. Hoffman, 341 Mich. 686, 69 N.W.2d 198, 201, 48 A.L.R.2d 1033; Johnson v. Lion Oil Co., 216 Ark. 736, 227 S. W.2d 162, 164. The losses incurred in such a transaction are not necessarily monetary losses; they could be an expenditure of time or out of pocket expense, or both. Summers v. Hoffman, supra; Berwin v. Cable, 313 Mass. 431, 47 N.E.2d 951.
The relationship of joint adventurers is fiduciary in character and imposes upon all of the participants the utmost good faith, fairness and honesty in dealing with each other with respect to the enterprise. Lind v. Webber, 36 Nev. 623, 134 P. 461, 135 P. 139, 141 P. 458, 50 L.R.A., N.S., 1046. See also cases cited in 30 Am. Jur., § 48, p. 974, n. 7, Joint Enterprises. It forbids one joint adventurer from acquiring solely for himself any profit or secret advantage in connection with the common enterprise. Zogg v. Hedges, 126 W.Va. 523, 29 S.E.2d 871, 152 A.L.R. 991. This is particularly true in the case of one to whom is entrusted the conduct of the enterprise. McRoberts v. Phelps, 391 Pa. 591, 138 A.2d 439.
The enterprise in this case was conceived by plaintiff. He invited Hicks and Fenwick to participate. All were to assist in negotiating for the materials, removing them and selling them at a profit. Hicks and Fenwick immediately took up negotiations with the Railroad Company for the sale of the ballast and ties on the whole *503 track. When Fenwick called the president of defendant on the telephone and inquired as to whether or not he would be interested, the pending negotiations with the Railroad Company were apparently for ties for the whole track and Fenwick in his discussion with Johnson was therefore necessarily referring to the whole track and not to a section.
There is no question but that the relationship between plaintiff and Hicks and Fenwick constituted a joint adventure. As between them and defendant, each party made a definite contribution to the enterprise. Each was to share in the profits. Each held a proprietary interest in the venture. Assuming that the sharing of losses is essential to a joint adventure, we think that each was liable in the operation of the enterprise to sustain a substantial loss in the event that the enterprise should not be successful. In our opinion the relationship of joint adventurers existed between them.
Even if we should accept defendant's contention that the relationship of joint adventurers did not exist between them, this would not help defendant. If it was engaged solely to lend the use of its name for a consideration, made no contribution to the enterprise, had no proprietary interest therein, had no control over the operation and stood to lose nothing as a result of its failure (a position with which, as we have heretofore indicated, we do not agree), then in making the contract on behalf of plaintiff, Hicks and Fenwick, it was acting as either trustee or agent. Stein v. George B. Spearin, Inc., 120 N.J.Eq. 169, 184 A. 436; Brady v. Erlanger, 165 App.Div. 29, 149 N.Y.S. 929; McRoberts v. Phelps, supra. See 30 Am.Jur., p. 943, n. 7, Joint Adventure; 48 C.J.S. Joint Adventures § 2, p. 810, n. 77. Under the circumstances, the duty of a trustee or agent to the other parties to the agreement would be equally as great as would be in the case of a joint adventure. The fiduciary relationship between the parties was such as to preclude one of them from dealing with property relating to the enterprise, either for himself or another, in the absence of full disclosure to his associates. Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1; Ditis v. Ahlvin Construction Co., 408 Ill. 416, 97 N.E.2d 244. An agent is a fiduciary in the sense that he has the duty to act primarily for the benefit of another in matters connected with the undertaking. Among his fiduciary duties to the principal is the duty to account for profits arising out of the employment, the duty not to act as, or on account of, an adverse party without the principal's consent, the duty not to compete with a principal on his own account or for another in matters relating to the subject matter of the agency and the duty to deal fairly with the principal in all transactions between them. Restatement of the Law, Agency, Second, Sec. 13(a).
Defendant next contends that even if this court should hold that there was a relationship of joint adventure, it existed only for the first section. Plaintiff contends, and it does not seem to be disputed, that originally it was contemplated that the work would cover the whole track all the way to Pocomoke City.
Plaintiff offered evidence to the effect that in a conversation with Knapp  who unquestionably was acting in a general capacity as agent for defendant  it was understood that plaintiff was to receive a one-third interest in the profits of the second section regardless of the interest of the others in it; that later, when he inquired of Knapp concerning the second section, he received evasive answers; that at the time of the original negotiations between Hicks and Fenwick with the Railroad their discussions apparently related to the whole track as far as Pocomoke City; that shortly after the agreement relating to the second section had been made, defendant, in violation of its agreement to deposit all receipts in a joint account, misappropriated and refused to pay *504 to plaintiff $5,000 received by defendant belonging to plaintiff; that, as the Chancellor found in his opinion below, Fenwick, without plaintiff's knowledge, obtained a commitment from the Railroad for the second section before the work was completed on the first; that the work on the second section was ordered by the Railroad as an "Order for Extra Work" under the original contract and provided for compliance with the terms of the original contract; that it was generally understood by all parties, including the Railroad Company, that if the work on the first section were performed properly, defendant would be given the job to complete the work all the way to Pocomoke City.
It is clear from the testimony above referred to that there was at least a factual situation as to whether or not plaintiff was entitled to participate in the work on section two. The Chancellor resolved that question in favor of the plaintiff  specifically rejecting the testimony of Fenwick that plaintiff had informed him that he was not interested in the second section  relying principally upon the general understanding of the parties and the fact that the work for the additional section was given as an enlargement of the original contract and was so accepted by defendant. We think that there was undoubtedly sufficient evidence in the record to sustain the finding of the Chancellor in this respect and that such finding should not be disturbed.
The judgment of the court below will be affirmed.