**LAKESHORE FINANCIAL CORPORATION, a Delaware Corporation, and Hackley Union National Bank & Trust Company of Muskegon, a National Banking Association, Plaintiffs,**

v.

**Lyndon D. COMSTOCK, Defendant.**

**No. G77–141 CA6.**

United States District Court, W.D. Michigan, S.D.

June 25, 1984.

a recommendation against deportation for a prior conviction under section 1251(b)(2).

Grant J. Gruel, Bruce M. Bieneman, Cholette, Perkins & Buchanan, Grand Rapids, Mich., for plaintiffs.

J. Walter Brock, McCroskey, Feldman, Cochrane & Brock, Muskegon, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This diversity case is before the Court on plaintiffs' renewed motion for summary judgment and its renewed motion to dismiss the defendant's counterclaim. The plaintiffs' complaint seeks a declaratory judgment that they owe no compensation to the defendant for the defendant's role in arranging a merger. The plaintiffs' original motion was denied because material facts remained unresolved.[1] Namely, the Court required facts which would indicate whether Michigan's Statute of Frauds [2] applies to the defendant's alleged fee agree-

ment. Also, further facts were required in order to determine the applicability of Michigan's Real Estate Brokers and Salespersons Act.[3]

On November 30, 1977 a merger was consummated between Lakeshore Financial Corporation and Detroit Bank Corporation, two bank holding companies. Hackley Union National Bank was a wholly owned subsidiary of Lakeshore, and became a wholly owned subsidiary of the surviving corporation after the merger. Defendant Comstock was the president of Hackley, but was asked by the bank's board to resign on August 11, 1976. However, it is the defendant's position that the plaintiffs orally agreed to pay him a "finders fee" for his efforts in arranging the merger between the two holding companies. Upon consideration of plaintiffs renewed motion for summary judgment, the Court concludes that the Michigan Statute of Frauds does not apply to the alleged oral agreement. The Court further concludes that the Michigan Brokers and Salespersons Act does apply, and its application in the instant case bars the defendant from any legal or equitable claim to a commission on the alleged transaction. Therefore, plaintiffs' renewed motion for summary judgment is granted.

The record indicates that Detroit Bank was to exchange shares of its stock with the holders of Lakeshore stock. Memorandum of Understanding, ¶ 2. The Plan of Merger entered into by Detroit Bank & Lakeshore provides:

C. From and after the Effective Date of Merger the separate existence of the Constituent Corporations shall cease and be merged into one, the Surviving Corporation, which shall possess all of the rights, privileges, powers and franchises as well of a public as of a private nature, and shall be subject to all of the restrictions, disabilities and duties of each of the Constituent Corporations so merged; and all and singular the rights, privileg-

1. Opinion and Order, December 14, 1981.

2. M.C.L.A. § 566.132(e).

3. M.C.L.A. § 451.201, *et seq.*

es, powers and franchises of each of the Constituent Corporations, and all property, real, personal and mixed, and all debts due to either of said Constituent Corporations on whatever account, as well for stock subscriptions as all other things and action belonging to each of the Constituent Corporations shall be vested in the Surviving Corporation resulting from the Merger; and all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the Surviving Corporation as they were of the several and respective Constituent Corporations and the title to any real estate vested by deed or otherwise, in either of such Constituent Corporations, shall not revert or be in any way impaired by reason of the Merger.

It is apparent that the merger accomplished the transfer of the assets of Lakeshore, including all real estate, to the surviving corporation.

 The Michigan statute of frauds provision at issue here is M.C.L.A. § 566.-132 which provides:

In the following cases an agreement, contract or promise shall be void, unless that agreement, contract, or promise, or a note or memorandum thereof is in writing and signed by the party to be charged therewith, or by a person authorized by him:

(e) An agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate.

This section is to be given strict construction. *Summers v. Hoffman*, 341 Mich. 686, 694, 69 N.W.2d 198 (1956). On consideration of the plain language of the statute it appears that an agreement to pay a commission upon the sale of an interest in real estate does not include the agreement at issue here. The agreement at issue here is one for the transfer of ownership of a bank of which real estate was an incidental part. Therefore it is the opinion of this Court that, having strictly construed the controlling statute, its plain language excludes the instant transaction.

The statute controls contracts to pay a commission upon the sale of an "interest in real estate." The Restatement of Contracts, Second § 127, defines those interests in land to which the statute of frauds applies.

§ 127. Interest in Land

An interest in land within the meaning of the Statute is any right, privilege, power or immunity, or combination thereof, which is an interest in land under the law of property and is not "goods" within the Uniform Commercial Code.

This section specifies that the law of property defines these interests for contract purposes. The Restatement of Property, Section 8, makes clear that "real property" refers to land. § 8(c) specifies that the term "interest in land" omits interests in "things other than land."

The decisions of the Michigan courts support the conclusion that the statute of frauds does not apply to the sale of a business. The sale of an ice cream business was held to be outside the statute. *City Ice and Fuel Co. v. Bright*, 73 F.2d 461 (6th Cir.1931). The Sixth Circuit ruled that plaintiff's claim to a commission for arranging the sale was not barred by the statute, but did not discuss the issue. In *Mitchell-Morris v. Samaras*, 325 Mich. 425, 38 N.W.2d 904 (1949) the plaintiff sued to recover a commission on the sale of a restaurant. The court characterized the sale as being for personalty rather than real estate. The court reached the same conclusion in *Mellios v. Dines*, 341 Mich. 175, 67 N.W.2d 68 (1954). Although these decisions do not set out the basis for this outcome it appears that they are based on the language of M.C.L.A. § 566.132(e). It appears that these courts do not include a business within the definition of real estate. The decision in the instant case is in accord with these Michigan cases.

 Although the alleged agreement to pay a commission on the instant transfer need not have been in writing, the Court finds that the defendant would have to possess a brokers license to recover any

agreed upon fee. Although the licensing scheme is entitled "Real Estate Brokers and Salespersons Act," its provisions apply to one who sells or arranges for the sale of a business. M.C.L.A. § 451.201 *et seq.* The section which specifies those persons covered by the licensing requirement provides, "One acting for a compensation or valuable consideration for negotiating the purchase or sale or exchange of a business ... shall constitute ... a real estate broker or real estate salesman within the meaning of this act." M.C.L.A. § 451.203. This section was amended in 1953 to make clear that participation in a single transaction is sufficient to constitute a violation if the person is unlicensed. The last sentence of § 451.203 states, "The commission of a single act prohibited hereunder shall constitute a violation."

 The defendant does not dispute that he negotiated the sale or exchange of a business. This is the basis of his counterclaim. His response is that he was not engaged in the vocation of business brokerage. The case cited by defendant for the proposition that one need be in the business to come within the statute is *Miller v. Stevens,* 224 Mich. 626, 195 N.W. 481 (1923). It appears that the 1953 amendment referred to above was intended to clarify any ambiguity as to the volume of transactions required to invoke the statute. *See* Weiner, "Broker/Finder: Can you collect?" 59 Mich.S.B.J. 330 (1980). By its terms, the statute requires only one.

The defendant argues that he is entitled to an equitable recovery in *quantum meruit* even though the brokers licensing statute may apply. The question of such a recovery where the commission has been denied by virtue of the instant statute appears to be settled in Michigan. The leading case, *Krause v. Boraks,* 341 Mich. 149, 67 N.W.2d 202 (1954), holds that there can be no *quantum meruit* recovery because an agreement to collect a commission in violation of the statute is void as being against public policy. This reasoning was followed in *Curry v. West Point Hills,* 30 Mich.App. 114, 185 N.W.2d 907 (1971), and

*Diedrich v. Harten,* 103 Mich.App. 126, 302 N.W.2d 618 (1981). Therefore this Court is constrained to deny any equitable recovery in *quantum meruit* in this case.

It is the conclusion of this Court based on the discussion above that the defendant has violated M.C.L.A. § 451.201 *et seq.* and therefore is foreclosed from any recovery from the plaintiffs, the statute of frauds notwithstanding. Therefore plaintiff's motion for summary judgment is granted, and this case is dismissed.