*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICOLAS SULAKA,

                    Plaintiff-Appellee,

UNPUBLISHED
February 25, 2020

v

No. 344400
Wayne Circuit Court
LC No. 16-010301-CZ

SAMUEL FORGACIU,

                    Defendant-Appellant.

Before: SHAPIRO, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

This action involves an alleged joint venture agreement between plaintiff, defendant, and nonparty Alan Rayis with regard to commercial real property in Detroit. The property was purchased solely in the name of defendant, and the parties did not have an express written agreement regarding the project. Following a bench trial, the trial court found that the parties formed an enforceable joint venture agreement to develop, operate, or sell the property. The court found that upon a sale of the property, plaintiff was entitled to one-third of the net sales proceeds, less $30,000 in expenses already advanced by defendant. After the trial court denied defendant's motion for a new trial, he appealed the judgment in favor of plaintiff. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

Plaintiff testified that in 2015, he learned from a friend that a large commercial property on Hoover Road in Detroit was for sale for $20,000. According to plaintiff, he talked to defendant and Rayis about purchasing the property and they discussed possible uses. Plaintiff considered leasing the property as a warehouse for his own business and they also discussed using it as a location for a medical-marijuana facility. Plaintiff explained that the three of them decided to purchase the property and jointly operate or sell it for a profit. He contributed $5,000 toward the purchase price, and defendant and Rayis each contributed $7,500. They were each to have a one-third interest. Plaintiff testified that although he contributed less cash, he was to receive an equal share because he found the property. At the time of the purchase, the seller executed a quitclaim deed conveying the property to defendant only. According to plaintiff, their plan was to have the

-1-

property held by a new entity in which they would each have a one-third interest, but the entity had not been organized at the time the property was purchased, so the property was placed solely in defendant's name, with the intent of transferring ownership to the new entity after it was formed. Rayis later sold his interest to defendant, giving defendant a two-thirds interest.

Plaintiff explained that they wanted defendant involved in the project because he had experience rehabilitating and remodeling properties. Per plaintiff's testimony, it was expected that defendant would initially assume the cost of securing and rehabilitating the property, but plaintiff acknowledged that he would remain liable for one-third of the expenses. Soon after the property was purchased, defendant performed work to secure, clean, and repair it. Defendant estimated that he spent about $30,000. During that time, the parties still had not agreed on how to use the property. Plaintiff showed it to one potential buyer.

In 2016, plaintiff prepared documents, including a proposed operating agreement, for the formation of a new entity, Sanick Holdings, LLC, that would hold title to the property. However, defendant refused to sign the documents and the parties were unable to work out their differences. Plaintiff testified that defendant mentioned that plaintiff had not paid any money toward the work performed on the building, but that defendant did not respond to plaintiff's requests for documentation of the work. Plaintiff said he was leery about paying money to defendant until their disagreements were resolved. Eventually, after not being able to resolve their disputes, plaintiff filed this action.

Defendant denied that plaintiff ever acquired any interest in the property. Defendant claimed that the $5,000 payment plaintiff made at the time of purchase was actually repayment of a debt that plaintiff owed to Rayis, which in turn Rayis applied toward the purchase price as part of Rayis's contribution. According to defendant, plaintiff was only interested in a business that they might operate at the property, and it was contemplated that plaintiff would receive a one-third interest in that business entity, but not the property. Defendant testified that plaintiff promised to assist in locating funding for a new business, but that never materialized. Defendant spent time and money upgrading the property, and plaintiff contributed nothing toward that work. Defendant agreed that if plaintiff had made payments toward that work, defendant would have treated him as a partner. But because plaintiff did not contribute toward the project, defendant advised him that he was going ahead with the project on his own. At the time of trial, defendant had located a buyer who was willing to purchase the property for $265,000.

Rayis testified that he, plaintiff, and defendant were all involved in the initial purchase of the property and their plan was for the three of them to hold a one-third interest in the company they intended to form that would hold title to and operate the property. Rayis explained that only defendant's name was listed on the deed because they were all friends and they trusted him. Rayis denied that the money plaintiff contributed at the time the property was purchased was to pay back a loan from Rayis.

The trial court found that the parties had formed an agreement for a joint venture to own the subject property and form a business. The court held that the joint venture agreement was valid as an oral agreement. Because the parties also contemplated selling the property instead of developing it, the court found that when defendant located a buyer and refused to share the sale proceeds with plaintiff, defendant breached the agreement. The court rejected defendant's

argument that plaintiff first breached the agreement by failing to timely pay his share of the expenses. The court held that upon a sale of the property, plaintiff was "entitled to one-third of the net proceeds less the $30,000 in expenses advanced by [defendant]."

## II. STANDING

Defendant first argues that plaintiff lacked standing to bring this action because the action belonged to plaintiff's then-existing business entity, Savannah Properties, LLC, not plaintiff individually. The trial court rejected defendant's standing argument because it found that plaintiff was seeking to enforce an agreement that he made in his individual capacity.[1]

"To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected." *Dep't of Treasury, Revenue Div v Comerica Bank*, 201 Mich App 318, 329-330; 506 NW2d 283 (1993). "The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). "When a party's standing is contested, the issue becomes whether the proper party is seeking adjudication, not whether the issue is justiciable." *Tennine Corp v Boardwalk Commercial, LLC*, 315 Mich App 1, 7; 888 NW2d 267 (2016).

Defendant's standing argument is premised on the terms of the proposed operating agreement that plaintiff had prepared, which would have named the holder of the one-third interest associated with plaintiff's $5,000 payment as Savannah's Properties, LLC, which is plaintiff's business entity. However, the proposed Operating Agreement was never executed, and plaintiff was not seeking to enforce an alleged agreement between his business entity, Savannah's Properties, and defendant. Instead, plaintiff was seeking to enforce an alleged joint venture agreement that he personally made with defendant, in which it was contemplated that the real property would eventually be held by the corporation they were going to create, Sanick Holdings, LLC. The proposed operating agreement, which was never consummated, is not dispositive of whether plaintiff personally formed an agreement with defendant. As the trial court found, the evidence showed that plaintiff was acting in his personal capacity when he entered into an agreement with defendant and Rayis to acquire the subject property. Any terms of an agreement related to how that property would later be held and controlled would involve a separate agreement, which would not impact plaintiff's standing to pursue this action to enforce the agreement entered into by him personally. Further, as the trial court noted in denying defendant's motion for a directed verdict, the fact that the source of plaintiff's $5,000 payment toward the property involved funds from plaintiff's business entity does not prove that plaintiff did not enter into the joint venture agreement with defendant and Rayis in his individual capacity. For these reasons, the trial court did not err by rejecting defendant's argument that plaintiff lacked standing to bring this action.

---

[1] We review de novo as a question of law whether a party has standing. *In re Gerald Pollack Trust*, 309 Mich App 125, 154; 867 NW2d 884 (2015).

## III. BREACH OF CONTRACT

Next, defendant argues that the trial court erred by finding that he, and not plaintiff, first breached the joint venture agreement that the parties formed.[2]

Defendant relies on "[t]he rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition, Inc v City of Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (quotation marks and citations omitted). He argues that plaintiff first breached their agreement by failing to provide funds to secure, repair, and rehabilitate the subject property. The trial court rejected this argument because (1) the parties contemplated that defendant would make the initial expense contributions and (2) the parties had not agreed that plaintiff would lose his interest in the venture if he failed to pay his share of the expenses by a specified date. Instead, the trial court reasoned, there was only an agreement that plaintiff was required to pay his share of the financial expenses, which he did not dispute. Thus, the court recognized that defendant was entitled to be reimbursed for his expense contributions before plaintiff could recover for his interest in the joint venture, and accordingly, it ordered that upon a sale of the property, plaintiff was "entitled to one-third of the net proceeds less the $30,000 in expenses advanced by [defendant]."

While defendant is correct that plaintiff admitted that he had not actually paid any share of the expenses related to securing, rehabilitating, or repairing the property, there was no agreement between the parties as to *when* plaintiff was to pay his share. When defendant requested payment for work after experiencing financial problems, plaintiff did not refuse to pay defendant, but rather asked for documentation of the work done, which defendant did not provide. To the extent that this could be considered a breach, it was not a substantial breach given that plaintiff did not refuse to pay for his one-third of the expenses and there was no agreement on when defendant was to be reimbursed. See *Able Demolition, Inc*, 275 Mich App at 585 (the rule precluding the party who first breached the contract from maintaining a breach-of-contract action "only applies if the initial breach was substantial."). Accordingly, the trial court did not err by rejecting defendant's argument that plaintiff was the first party to substantially breach the parties' agreement such that plaintiff could not maintain his own action for breach of contract.

## IV. JOINT VENTURE

Defendant also argues that the trial court erred by finding that plaintiff had a one-third interest in the subject real property. This argument miscomprehends the basis of the trial court's decision. The court did not find that plaintiff had a one-third interest in the real property itself, but rather that the parties had an "enforceable joint venture agreement whereby they will develop,

---

[2] We review a trial court's factual findings following a bench trial for clear error, and its conclusions of law de novo. *Trahey v City of Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015); MCR 2.613(C). "A finding of fact is clearly erroneous if there is no evidentiary support for it or this Court is left with a definite and firm conviction that a mistake has been made." *Trahey*, 311 Mich App at 593 (citation omitted). In reviewing the trial court's findings, "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

operate or sell the Hoover real estate." The court found that the parties' agreement included that defendant "would have the deed in his name." The court did not award plaintiff an interest in the real property itself, but ruled only that plaintiff had a one-third interest in the joint venture that pertained to the operation, development, or ultimate sale of the property.

Defendant argues that the trial court's decision is unclear and needs to be clarified, because he cannot determine under which theory or theories it granted plaintiff relief. We disagree. It is apparent from the trial court's conclusions of law that it viewed plaintiff's action as one for breach of contract. The court found that the parties formed a joint venture agreement to buy a building to jointly operate a business or sell for profit. The court specifically found that the parties' agreement did not involve a contract for the sale or purchase of land that would be barred by the statute of frauds. As indicated earlier, the court rejected defendant's argument that plaintiff could not maintain this action because he committed the first breach by not reimbursing defendant for his financial contributions to the property. The court's findings are sufficiently clear and definite to determine that the trial court granted plaintiff relief under a breach-of-contract theory. Remand for clarification of the trial court's findings or decision is not necessary.

Defendant also argues that the trial court clearly erred by finding that the parties had an enforceable joint venture agreement related to the subject property, but his argument only involves the statute of frauds, which is addressed in section IV, *infra*. Defendant does not otherwise challenge the trial court's factual findings in support of its conclusion that the parties formed a joint venture agreement to develop, operate, or sell the property. Accordingly, we affirm the trial court's ruling with respect to that issue.

The trial court also found that the parties contemplated selling the property for a profit as an alternative to developing or operating a business on the property. Therefore, the court provided as a remedy that if the property was sold, plaintiff would be "entitled to one-third of the net proceeds less the $30,000 in expenses advanced by [defendant]." Defendant complains that the court's decision forces him to work with plaintiff to either continue to develop the property, operate a business, or sell it. The trial court merely decided the nature of the joint venture that the parties agreed to form and held that plaintiff had a one-third interest in that joint venture. The court did not otherwise dictate what was to be done with the property or how the parties should handle matters going forward, other than specifying that, should the property be sold, plaintiff would be entitled to a one-third share of the net sales proceeds, consistent with the parties' joint venture agreement. We note, however, that the property has since been sold and all that remains is the distribution of the sale proceeds. Accordingly, defendant's argument regarding the effect of the trial court's decision on the parties' future course of conduct is moot.

## V. STATUTE OF FRAUDS

As noted, defendant argues that the trial court erred by rejecting his argument that the alleged agreement between the parties was void under the statute of frauds. We again disagree.[3]

MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

In *Summers v Hoffman*, 341 Mich 686, 689-690; 69 NW2d 198 (1955), the Court considered the enforceability of an oral agreement to acquire and develop real estate. The Court held that the statute of frauds did not require a writing for a joint venture that involved the division of profits from the sale of land. *Id.* at 692-697. It explained that an agreement to share in the profits derived from the sale of reality is not within the statute of frauds and, therefore, need not be in writing. *Id.* at 697-698. See also *In re Handelsman*, 266 Mich App 433, 440-441; 702 NW2d 641 (2005) (holding that when an oral agreement relates to money generated by real property, rather than an interest in the real property itself, the statute of frauds is not implicated).

In this case, the trial court did not purport to adjudicate any property interest in the Hoover Road property, but instead found that the parties formed a separate joint venture agreement to develop, operate, or sell the property. Similar to *Summers*, the trial court did not err by ruling that this type of agreement was not barred by the statute of frauds.

## VI. OPERATING AGREEMENT

Finally, defendant complains that the effect of the trial court's decision was to enforce the proposed Operating Agreement that plaintiff had prepared, but which the parties never signed. We disagree because the trial court's decision was not based on the proposed operating agreement, but rather was based on other evidence indicating that the parties agreed to form a joint venture to acquire, operate, or sell the business property to earn a profit. Plaintiff offered the proposed operating agreement as evidence that, by presenting the proposed agreement to defendant, he was acting consistently with the parties' *prior* agreement to jointly operate or sell the business property. The trial court did not find that this proposed agreement established the basis for the joint venture agreement between the parties, nor did it find that it governed the parties' business relationship.

Defendant also argues that the trial court erroneously ordered him to sell property for which he was the sole record owner. However, the court did not order defendant to sell the property, but

---

[3] We review de novo questions of law, including whether the statute of frauds bars enforcement of a purported contract." *Zander v Ogihara Corp*, 213 Mich App 438, 441; 540 NW2d 702 (1995).

merely ordered that plaintiff would be entitled to one-third of the net sales proceeds after reimbursement of defendant's expense advances if the property was sold. That decision is consistent with the joint venture agreement found by the trial court. The evidence supports the trial court's findings that the parties were ultimately concerned with profiting from the property through the joint venture, whether that meant developing it or selling it.

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Michael J. Kelly